IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 21, 2010 Session

## JOSHUA TODD DANIELS v. KEVIN GRIMAC, ET AL.

**Direct Appeal from the Circuit Court for Knox County**
**No. 1-386-06      Dale Workman, Judge**

**No. E2009-01510-COA-R3-CV - FILED NOVEMBER 9, 2010**

This is an appeal from a judgment summarily holding attorney Herbert S. Moncier in direct, criminal contempt of court. Because the trial court improperly exercised its summary contempt authority several weeks after the cited conduct occurred, we vacate its judgment and remand this case for additional proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Herbert S. Moncier, *Pro se*.

## OPINION

### I. Background and Procedural History

This appeal arises out of the citation of attorney Herbert S. Moncier ("Moncier") for direct, criminal contempt of court. On April 23, 2009, the trial court entered the following order titled "**CITATION FOR CONTEMPT**":

Mr. Herbert S. Moncier met with the court on a pretrial conference on April 17, 2009. At that conference Mr. Moncier asked the court what he could ask the jurors about insurance. Following the discussion with the court and counsel[,] the court told Mr. Moncier the only questions appropriate to be asked where [sic] if they did any work dealing with evaluation and settlement of claims. Although, the court thought that the better way was to ask without

reference to insurance[;] the court could not say asking if they dealt with claims for an insurance company was inappropriate.

On Monday, April 20, 2009[,] Mr. Moncier asked a juror questions different from the instructions by the court, see attached transcript, Exhibit A.[1]

*This matter shall be set on the courts [sic] motion docket on June 12, 2009 at 9:00 a. m. for a hearing as to whether Mr. Moncier is in contempt and an appropriate punishment.*

(Emphasis added). Moncier thereafter filed a number of pretrial motions with respect to the citation for criminal contempt, which the trial court denied.

On June 12, 2009, the trial court commenced a hearing on the contempt citation. Rather than provide Moncier an opportunity to present evidence in support of his position, the trial court summarily held Moncier in direct, criminal contempt of court based on his violation of the court's ruling during voir dire. Moncier was not, in the court's opinion, entitled to any further notice or hearing:

| | |
|---|---|
| Mr. Moncier: | Your Honor, may I be heard? |
| The Court: | No, sir. |
| Mr. Moncier: | May I - - |

---

[1]The attached excerpt from voir dire contains the following exchange:

Mr. Moncier:  Does anyone work for an insurance company? You are Ms. - -

Juror:  Linda Borne.

Mr. Moncier:  What insurance company do you work for?

Juror:  I work at Travelers, just personal loans, auto and home.

Mr. Moncier:  Do you have home premises insurance, like somebody injured in a home?

Juror:  I just sell insurance over the phone when they call in, for auto and home.

Mr. Moncier:  When a person says that somebody is injured in my home - -

The Court:  Counsel, approach the bench.

The Court:          No, sir.

Mr. Moncier:        You've given me no notice of any of this.

The Court:          No, sir. I've already said my finding, and that tells you, sir, what the Court found. It's found you in contempt. Try not to do anything, sir, to cause a problem. [I] [a]sked you not to insist that you be given - - you insisted. I didn't have to, sir. I've made my ruling, and that's it. This is not a place - - if you want to talk to the press, you can do so outside, sir.

Mr. Moncier:        Sir, you gave me an order - -

. . . .

The Court:          The Court has clearly said, Mr. Moncier, but read the Court's ruling. This is a summary finding of contempt. No hearing is additionally necessarily [sic]. I do not need to have anything else filed as evidence. The Court has filed a record of its findings, sir. Thank you, sir.

On June 18, 2009, the trial court entered an order finding Moncier in contempt.[2] The court explained:

As to the contempt, attached to the citation issued on Thursday, April 23, 2009 is the voir dire of Mr. Moncier of juror Linda Borne. The voir dire occurred on Monday, April 20, 2009. The questions occurred in the court's presence so this is a matter of summary contempt and no further notice was necessary and the court could have decreed any punishment immediately. Correct[ly] or incorrectly, the court did not do so. Correctly or incorrectly, the court believed until it imposed a punishment or made an official record then no permanent finding was entered and no duty to report the matter to the licensing board was required ethically of the court. As the court explained to

_____

[2]The record contains an identical order issued June 12, 2009.

-3-

Mr. Moncier on the morning of Tuesday, April 21, 2009[,] the only reason the court was going to hear this matter at a later date was that the court wanted to make sure that "the punishment fit the crime" because the court did not know if the Federal Court proceedings or a matter before the BPR would automatically be triggered if he was found in contempt.

From that point on, the court tried not to put down a formal record . . . , even after the court told Mr. Moncier "I suggest for your own benefit that you wait until after the charge." Mr. Moncier responded "I would like to have the notice of charges filed immediately, Your Honor."

With that, the court stopped trying to avoid an official record [and] directed the court's secretary to type a formal statement of the contempt and sent a letter to the BPR. [citing attached transcript].

As to the contempt, Mr. Moncier is correct about one thing that at the time the court was asked about what questions could potential jurors be asked about insurance on Friday, April 17, 2009, Mr. Moncier had left the court's chambers and went to another hearing[,] but it does not change the nature of his actions. How [sic] own notes reflect at page 80 of those notes and after hearing various issues as to the evidence, the law applicable to the case and the procedure to be used for 1 hour and 45 minutes, the following occurred:

> Mr. Wigler: Yes, Herb needs clarification in voir dire about permissible questions concerning insurance.[3]

> Judge: I prefer it not be used at all.

After discussion about various aspects of insurance and potential questions the following [occurred:]

> Judge: . . . . Your [sic] blowing smoke. Now but about claims that's a whole different story. But I think the whole

---

[3]The record indicates that "Mr. Wigler" is attorney David S. Wigler ("Wigler"). Wigler prepared the complaint on behalf of the plaintiff in this case, conducted the discovery, and intended to try the case until a conflict arose. The plaintiff thereafter agreed that Wigler's colleague, Moncier, would try the case. Moncier, however, developed a conflict that required him to leave the April 17 pretrial conference to attend another proceeding. Moncier specifically requested that Wigler, who was also in attendance at the pretrial conference, inquire about the trial court's views on insurance-related questions during voir dire. Wigler followed through on this request, ultimately leading to the ruling that Moncier allegedly violated.

-4-

thing about insurance is totally . . . not appropriate unless it relates to their qualifications of a juror and if your saying that anybody that has insurance is bias[ed] and prejudice then that's everybody on the jury. Cause everybody out there owns an interest [in an] insurance company[;] they pay premiums.

On Monday[,] Mr. Moncier asks a juror is she familiar with insurance that pays if someone is hurt on your property in a voir dire for a premises liability case.

The court finds that obviously the question about insurance was premediated [sic] because of the questions to the court on Friday[; it was] not a [sic] off-the-cuff mistake or error made unintentionally.

It makes no difference if he was present[;] he has a duty . . . to follow any direct decision by the court about this subject. To say I can get away with asking the question since I was not there even if the question was asked by another is ridiculous especially since it was asked "Herb needs clarification."

Had there never been a hearing, any competent attorney should know not [to] ask a juror such a question in a premises liability case, to put in front of the rest of the jury that there is insurance that pays if someone is hurt on your property, such action is a gross attempt to introduce bias and prejudice into the case.

The court concluded that, although it had already summarily found Moncier in contempt, no punishment for Moncier's conduct would have effect. The court accordingly entered none.

The trial court entered a second order on June 25, 2009, which stated in part:

To satisfy Mr. Moncier's most recent motion as to his contempt, if the court's findings attached to the order of June 18, 2009 were not specific enough, it is hereby ORDERED:

1. The court found Mr. Moncier in contempt on Monday[,] April 20, 2009 for his questions propounded to a potential juror, Linda Borne, after the court had stated in a hearing on Friday, April 17, 2009 what questions about insurance could be propounded to a juror;

2. The court in its findings of June 18, 2009 confirmed the findings of Mr. Moncier's actions being a contempt of court;

3. For the reasons stated in the courts [sic] findings attached to the order of June 18, 2009[,] the court accesses [sic] no punishment on Mr. Moncier for his contempt.

On July 13, 2009, the trial court entered a third order denying various additional motions that Moncier filed, including a motion to alter or amend the court's June 25 order and a motion for new trial on the issue of contempt. The court stated:

This matter came to be hearing [sic] on the 10th day of July 2009 on motions of Herbert S. Moncier to grant various forms and types of relief from this Court's orders pertaining to contempt. The Court having considered the motions and arguments of counsel is of the opinion that the motions are not well taken from which it is

ORDERED that the motions of Herbert S. Moncier for relief from contempt rulings be and the same are hereby DENIED.

Moncier timely appealed.

## II. Issue Presented

Although Moncier has raised a litany of issues on appeal, the dispositive issue is whether the trial court erred when it summarily held Moncier in direct, criminal contempt of court more than three weeks after the alleged contempt occurred in the presence of the court.[4]

## III. Standard of Review

Criminal contempt actions have long been used to protect the dignity and authority of the court. *E.g.*, *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). Criminal contempt proceedings "in a very true sense raise an issue between the public and the accused." *Id*. (quoting *State ex rel. Anderson v. Daugherty*, 191 S.W. 974 (Tenn. 1917)); *see also State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). Criminal contempt should be imposed in

---

[4]We note that neither the parties to the underlying civil case nor the State of Tennessee filed a brief in opposition.

appropriate cases "when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." *Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908, 912 (Tenn. 1964). Thus, sanctions imposed for criminal contempt generally are both punitive and unconditional. *Black*, 938 S.W.2d at 398.

A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law. *Robinson*, 377 S.W.2d at 912. Generally, the trial court's decision will not be disturbed absent an abuse of discretion. *Id.* One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. *Id.* On appeal following a finding of contempt, however, the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. *Id.* With respect to the trial court's determinations on questions of law, however, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

*Watkins, ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *3 (Tenn. Ct. App. May 13, 2009).

## IV. Analysis

The courts' inherent power to punish acts of contempt historically has been regarded as essential to protect the authority and integrity of the courts. *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996). Although at common law the court's power to punish contempt was "vast and undefined[,]" the court's contempt authority now is governed by statute in this State. *Id*.; Tenn. Code Ann. § 29-9-102 (2000). Contempt may be either civil or criminal in nature, and may be either direct or indirect. *Black*, 938 S.W.2d at 398. While civil contempt is remedial and coercive and designed to compel compliance with the court's order, the purpose of criminal contempt is to safeguard the authority of the court. It is therefore punitive in nature. *Id.* Indirect contempt arises from acts committed out of the presence of the court, and cannot be punished unless the accused has been given the due process protections of notice and an opportunity to be heard. *Id.* Acts constituting direct contempt, on the other hand, are acts committed in the presence of the court. *Id.* Direct contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting contempt. *Turner*, 914 S.W.2d at 956; Tenn. R. Crim. P. 42(a). When the charged acts of contempt involve disrespect to the trial court or criticism of the judge, that judge is disqualified from presiding over

-7-

the contempt hearing unless the defendant consents. *Black*, 938 S.W.2d at 398. Recusal is preferred except where it would cause prejudicial or injurious delay. *State v. Turner*, 914 S.W.2d 951, 961 (Tenn. Crim. App. 1995).

. . . .

Clearly, a trial judge has the authority to punish direct contempt summarily when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice. *State v. Turner*, 914 S.W.3d 951, 956 (Tenn. Crim. App. 1995). The court's summary contempt power "may be invoked when there is a need to 'act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a . . . trial.'" *Id.* (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)). However, because the imposition of summary punishment often dramatically departs from traditional concepts of due process, it should be used sparingly and reserved for circumstances where it is essential. *Id.* at 957 (citations omitted).

The determination of whether such exceptional circumstances exist is generally left to the sound discretion of the trial court. *Id.* (citations omitted). In exercising its discretion, the trial court must consider the nature of the accused's conduct; the effect of the conduct on the administration of justice; and the overall purpose of Tennessee Rule of Criminal Procedure 42(a), in addition to its facial requirements. *Id.* at 958. Acts justifying a summary contempt judgment include "acts threatening the judge or disrupting a hearing or obstruction of court proceedings." *Id.* at 957 (quoting *Harris v. United States*, 382 U.S. 162, 164 (1965). They also include "unusual situations . . . where instant action is necessary to protect the judicial institution itself." *Id.* (quoting *Harris*, 382 U.S. at 164). Tennessee courts have held that direct acts of contempt include acts committed in the presence of the court that are disrespectful, unreasonable, or contemptuous; use of violent or loud language or noises; or "turbulent" conduct that disrupts the proceedings. *Id.* at 958 (citations omitted). Thus, the court's discretion must be balanced against the preference for proceedings that include notice and a hearing, and in some cases, particularly where the acts of the accused consist of acts directed against the trial judge, a different judge. *Id.* at 959. When the trial judge defers the imposition of punishment until the trial has concluded, the need for summary proceedings diminishes and the preference for a hearing increases. *Id.* n. 11.

*Watkins*, 2009 WL 1328898, at *4-6 (footnote omitted).

The question in this case is whether the trial court erred when it exercised its summary contempt authority more than three weeks after it initially cited Moncier for contempt. This Court addressed a nearly identical issue in *Watkins, ex rel. Duncan v. Methodist Healthcare System*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898 (Tenn. Ct. App. May 13, 2009). In *Watkins*, a plaintiff's attorney, Sadler Bailey ("Bailey"), made several remarks during the course of proceedings before the trial court which the court deemed contemptuous. *Watkins*, 2009 WL 1328898, at *1. Thereafter, the court advised Bailey that it believed his conduct rose to the level of criminal contempt, that the court had spoken to another attorney about accepting the role of a special prosecutor on the contempt charge, and that the court believed another judge should conduct the contempt proceeding. *Id.* at *2. A few days later, the trial court entered an order setting the matter for hearing. *Id.* At the subsequent hearing, however, the court denied Bailey's request to present witnesses, as well as his request to "be heard" on the issue of contempt. *Id.* The court instead announced that it had summarily cited Bailey for direct, criminal contempt of court based on his language and conduct during the prior proceeding, reviewed its written findings of fact and conclusion of law, imposed a $50 fine, sentenced Bailey to ten days in jail, and suspended nine days of the sentence pending Bailey's voluntary participation and completion of various programs provided by the Tennessee Lawyers Assistance Program. *Id.*

Bailey's counsel objected to the court's exercise of summary contempt authority, arguing that the court had deprived Bailey of due process where it had already announced that a hearing would occur before a special judge with a special prosecutor. *Id.* The trial court rejected this argument and stated in its order:

> The [c]ourt initially indicated that this matter would be dealt with by appointing a special prosecutor and having a special judge assigned to hear the case. Upon further reflection, the [c]ourt decided that this was a direct criminal contempt that should be dealt with summarily but through a written finding of facts and law.

*Id.* at *3 (quoting the trial court). The court accordingly determined that Bailey was not entitled to a hearing on the question of contempt. *Id.* Bailey appealed, arguing in part that the trial court erred when it summarily held him in direct, criminal contempt of court. *Id.*

This Court vacated the trial court's exercise of summary contempt authority because the court impermissibly delayed its finding beyond the proceeding during which the contempt occurred. We concluded that the trial judge had not merely waited to determine the appropriate punishment at the subsequent hearing:

> Although the trial court's April 2, 2008, order on contempt states that the court

-9-

"cited Mr. Bailey for direct criminal contempt of court" on March 27, the record does not support this finding. As noted above, when it reconvened on the afternoon of March 27, the court stated, "the Court feels that you are in criminal contempt for your remarks." The court then advised Mr. Bailey that it had spoken with an attorney about accepting the role of special prosecutor. The court additionally stated that it believed it was appropriate for another judge to hear the contempt proceedings. The court advised Mr. Bailey that there would be a charging document served on him informing him of the time and place of the hearing. Despite that trial court's comment that it "[thought] that the dignity of the court was challenged in such a way [that] morning that cannot be overlooked[,]" the court did not summarily hold Mr. Bailey in contempt.

A punishment imposed summarily is one imposed "without ceremony or delay." Black's Law Dictionary 1435 (6th ed. 1990). A summary proceeding is a "[s]hort, concise, and immediate proceeding" and a summary process is "[s]uch as is immediate or instantaneous, in distinction from the ordinary course, by emanating and taking effect without intermediate applications or delays." *Id.* The trial court did not hold Mr. Bailey in contempt on March 27. Rather, it scheduled a contempt hearing for April 2 and then sought to exercise its summary authority over acts of direct contempt.

*Id.* at *6-7.

This Court went on to hold that the trial court erred when it attempted to exercise its summary contempt authority at a subsequent hearing:

Without opining on the merits of Mr. Bailey's assertion that his acts did not constitute acts of contempt, we must agree that the imposition of summary contempt was not appropriate in this case where a hearing was scheduled and held some six days after the alleged acts of contempt occurred. The trial court did not exercise its permissive, discretionary authority on March 27. The April 2 hearing at which the trial court found Mr. Bailey to be in contempt simply was not a summary proceeding as anticipated by the statutes or Rule 42(a). The need for the imposition of summary punishment had greatly diminished by April 2, and a hearing as originally anticipated by the trial court, including an opportunity to be heard, was appropriate at this juncture. We accordingly vacate the trial court's order on contempt and remand for further proceedings.

*Id.* at *7.

-10-

We reach a similar decision in this case. The record shows that the trial court did not summarily hold Moncier in contempt when he allegedly violated the court's ruling on the permissible bounds of inquiry during voir dire. Rather, the court cited Moncier for contempt, entered an order scheduling a contempt hearing for June 12 to determine whether Moncier was guilty of contempt, and then exercised its summary authority at the subsequent hearing. As in *Watkins*, the subsequent hearing at which the trial court exercised its summary authority was not the type of summary proceeding authorized by our statutes or procedural rules and the need for the imposition of summary punishment had greatly diminished. Without opining on the merits of Moncier's assertion that his conduct during voir dire did not constitute contempt, we agree that the imposition of summary contempt was inappropriate. We therefore vacate the trial court's judgment of contempt and remand for further proceedings. Because the record shows that the trial judge recused himself subsequent to Moncier's appeal of the contempt finding due to the development of a personal bias, we find it unnecessary to address whether the judge should be disqualified from presiding over the contempt hearing on remand.

## V. Conclusion

For the foregoing reasons, we vacate the judgment of the trial court on contempt and remand this case for further proceedings. We tax the costs of this appeal in our discretion to the appellant, Herbert S. Moncier, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

-11-