IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2025 at Jackson

## STATE OF TENNESSEE v. CRYSTAL LEE MARTIN

**Appeal from the Criminal Court for Sumner County**
**No. 83CC1-2019-CR-121  Dee David Gay, Judge**
_____

### No. M2024-00876-CCA-R3-CD
_____

The defendant, Crystal Lee Martin, appeals the order of the trial court revoking her probation and ordering her to serve her original six-year sentence in confinement. Upon our review of the record, the parties' briefs, and the applicable law, we affirm revocation of the defendant's probation but reverse the trial court's imposition of the original sentence and remand for the trial court to make findings concerning the consequence imposed for the revocation in accordance with *State v. Dagnan*, 641 S.W.3d 751, 753 (Tenn. 2022).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed in Part, Reversed in Part, and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which JILL BARTEE AYERS and TOM GREENHOLTZ, JJ., joined.

Crystal Lee Martin, Gallatin, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Ray Whitley, District Attorney General; and Eric Mauldin, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

On November 18, 2019, the defendant pled guilty to attempted aggravated child neglect of a child under 18 years old and received a sentence of six years to be served on

community corrections after service of six months in confinement with the Tennessee Department of Correction.[1]

On January 20, 2021, a revocation warrant was filed, alleging that the defendant violated the terms of her community corrections sentence having been charged with domestic assault, a violation of condition #1 which required the defendant to obey all laws and ordinances. The defendant pled guilty to the violation and was resentenced to a partial revocation, requiring that she serve 30 days in confinement with the remainder of her original sentence suspended to probation.

On August 25, 2022, a second revocation warrant was filed, alleging the defendant had tested positive for THC, in violation of condition #8 which required the defendant to refrain from using intoxicants or controlled substances. Again, the defendant pled guilty to the violation and was reinstated to probation by order of the trial court.

Lastly, on August 21, 2023, a third revocation warrant was filed alleging the defendant had been charged with driving under the influence and violation of the implied consent law.

At the May 17, 2024 revocation hearing, the State presented the testimony of a minor witness, N.V.,[2] who testified that on August 19, 2023, she arrived to work an evening shift at Subway at approximately 5:00 p.m. After she arrived, the defendant left for a "break" and stated that she would be back in one hour. At 7:45 p.m., when the defendant had not returned, N.V. began calling and texting the defendant to inquire as to her whereabouts. At approximately 8:02 p.m., N.V. saw the defendant drive back into the parking lot and described the defendant as sitting "inside of her car just staring at [her]." N.V. also stated that the defendant was stumbling as she walked into the store, slurring her words, and falling onto the counter. N.V. also described the defendant's eyes as "going to the back of her head." N.V. left the scene to go home but returned a few minutes later to check on the defendant. Soon after she returned to the restaurant, N.V. noted that the police had been called to the scene.

Officer Kalum Stanley, an officer with the Hendersonville Police Department, testified that he was dispatched to the Subway restaurant to respond to a suspicious person call. When he arrived at Subway, Officer Stanley was met by three individuals outside who reported an intoxicated employee inside the restaurant. Upon encountering the

---

[1] The defendant's sentence also included special conditions requiring a mental health evaluation, a drug and alcohol evaluation within 60 days of release from confinement, and parenting classes. The defendant was also to not have contact with the minor.

[2] It is the policy of this Court to refer to minors by their initials. For purposes of this opinion, the witness will be referenced as N.V. unless otherwise noted.

defendant inside the restaurant, Officer Stanley noted that the defendant lacked dexterity in her fingertips and had slurred speech. Officer Stanley testified that the defendant initially denied any consumption of alcohol, but later stated she had two margaritas, and then again changed her response to one margarita and a taco. Officer Stanley requested the defendant perform a field sobriety test, which she refused. There were no signs of alcohol inside the Subway restaurant or inside the defendant's vehicle. After the defendant refused consent to a blood draw, the defendant was placed under arrest. Officer Stanley, therefore, obtained a search warrant for a blood draw. During the draw, the defendant stated, "of all the times I've driven drunk, this is the time that I'm caught." Officer Stanley testified that based on his three-and-a-half-years of experience with the police department and his observations of the defendant, he believed she was "impaired under the influence of alcohol."

The blood samples taken from the defendant were analyzed for alcohol content by Special Agent Kelly Hopkins, an expert in forensic chemistry with the Tennessee Bureau of Investigation. Specifically, Special Agent Hopkins testified that the defendant's blood alcohol content was 0.212-gram percent.

Officer Joseph Pace, another officer with the Hendersonville Police Department, responded to the scene as a backup unit to Officer Stanley. Officer Pace testified that he visited several nearby restaurants in an attempt to ascertain where the defendant had been earlier in the evening and to locate additional witnesses. After visiting several restaurants, Officer Pace discovered the defendant had been seen at a nearby Mexican restaurant. The defendant's presence was confirmed by a waitress, and the defendant's receipt had been inadvertently left at the table where she had been served. The receipt showed the defendant had ordered and paid for three drinks from the bar at approximately 8:07 p.m. The waitress confirmed that the defendant imbibed two and a half of her drinks prior to leaving. Officer Pace also testified that he attempted to locate surveillance video from Subway that night, but the cameras were inoperable.

After hearing argument from counsel, the trial court found that, based upon the testimony of N.V., Officers Stanley and Pace, and Special Agent Hopkins, the defendant had driven under the influence and violated the terms of her probation. The trial court then determined that the defendant's sentence was to be revoked, and she was to spend the remainder of her sentence in confinement. As the hearing concluded, the defendant began to speak out in open court despite multiple warnings by the trial court to cease. The defendant referred to the trial court as a "gangster Sumner County cartel." The State requested the defendant be found in contempt of court, and the trial court agreed. Ultimately, the trial court sentenced the defendant to an additional 10 days to be served consecutively to her original sentence.

*Analysis*

On appeal, the defendant argues that the trial court erred by ordering her to serve the remainder of her six-year sentence in confinement. Specially, the defendant contends the trial judge abused its discretion in revoking her probation, there was insufficient evidence that she violated the terms of her probation, certain evidence should have been excluded, and she was provided ineffective assistance of counsel. Additionally, the defendant argues that the violation warrant was facially invalid and that the time between her arrest and her revocation hearing violated her constitutional rights. Lastly, the defendant appeals the trial court's decision to hold her in contempt of court. The State argues the trial court acted within its discretion in finding the defendant violated her probation and sentencing her to confinement as there was adequate evidence of the defendant's violation. Furthermore, the State asserts the defendant's remaining issues on appeal are waived or meritless. We find the trial court did not abuse its discretion in determining the defendant had violated the conditions of her probation. However, we find the trial court did not sufficiently include findings of fact as to the defendant's disposition in accordance with *State v. Dagnan,* 641 S.W.3d 751, 753 (Tenn. 2022). All other issues raised by the defendant are waived or without merit.

## I.      Trial Court's Determination of Violation and Disposition

A trial court's decision to revoke probation is reviewed for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A probation revocation proceeding ultimately involves a two-step inquiry. A trial court, upon finding by a preponderance of the evidence that a defendant violated the conditions of his or her probation, must determine (1) whether to revoke probation, and (2) the appropriate consequence to impose upon revocation." *Id.* at 753.

### a.  Trial Court's Finding of Violation

A trial court has statutory authority to revoke a suspended sentence upon finding that the defendant violated the conditions of the sentence by a preponderance of the evidence. Tenn. Code Ann. § 40-35-310, -311*; see State v. Turner,* No. M2012-02405-CCA-R3-CD, 2013 WL 5436718, at \*2 (Tenn. Crim. App. Sept. 27, 2013). "The trial judge has a duty at probation revocation hearings to adduce sufficient evidence to allow him to make an intelligent decision." *State v. Leach,* 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995) (citing *State v. Mitchell,* 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). If a violation is found by the trial court during the probationary period, the time within which it must act is tolled and the court can order the defendant to serve the original sentence in

full.  Tenn. Code Ann. § 40-35-310; *see State v. Lewis*, 917 S.W.2d 251, 256 (Tenn. Crim. App. 1995).

To overturn the trial court's revocation, the defendant must show the trial court abused its discretion.  *See State v. Shaffer*, 45 S.W.3d 553, 554-5 (Tenn. 2001).  In revocation cases, the trial court abuses its discretion when the record contains "no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred."  *Id.* at 554 (citing *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991)).  "The evidence need only show the trial judge has exercised conscientious judgment in making the decision rather than acting arbitrarily." *Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980).

Here, the trial court's determination that the defendant violated the conditions of her probation was not an abuse of discretion.  At the hearing, the trial court heard testimony that the defendant was seen driving a vehicle to work, emerging from the vehicle stumbling, and slurring her words.  Officer Stanley testified that his experience and observations of the defendant indicated to him that she was intoxicated.  Lastly, the toxicology report conducted by the Tennessee Bureau of Investigation showed the defendant to have 0.212-gram percent ethanol in her blood.  Upon review, the record contains sufficient evidence to support the trial court's decision.  Therefore, in the first step of its discretionary analysis, we conclude the trial court did not abuse its discretion in revoking the defendant's probation.

### b.  Trial Court's Determination to Sentence to Confinement

Having concluded that the trial court's determination to revoke the defendant's probation was not an abuse of discretion, this Court must separately review the trial court's determination of the consequence imposed on the defendant.  When a defendant's probation is revoked, the trial court has "discretionary authority to: '(1) order confinement; (2) order execution of the sentence as originally entered; (3) return the defendant to probation on appropriate modified conditions; or (4) extend the defendant's probationary period by up to two years.'"  *State v. Fleming*, No. E2017-02352-CCA-R3-CD, 2018 WL 6787580, at *2 (Tenn. Crim. App. Dec. 26, 2018) (quoting *State v. Brawner*, No. W2013-01144-CCA-R3-CD, 2014 WL 465743, at *2 (Tenn. Crim. App. Feb. 4, 2014)) (citations omitted).[3]  "The determination of the proper consequences of the probation violation embodies a separate exercise of discretion."  *Id.* (citing *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).  While it is "not necessary for the trial court's findings to be particularly lengthy or detailed," sufficient reasoning must exist to promote meaningful

---

[3] Tenn. Code Ann. § 40-35-308(c)(1) statutorily limits trial courts to a maximum of one year extension of probation.

appellate review. *Dagnan*, 641 S.W.3d at 759 (*citing State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)). The Tennessee Supreme Court also clarified this Court's review on appeal is the same standard of review applied in the context of sentencing decisions: "abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *Id.* at 6.

Here, we conclude that the trial court failed to make the required findings of fact as to its disposition of the revocation. While it is clear from the record that the defendant's current violation was her third revocation, the trial court did not place on the record "sufficient findings and the reasons for its decisions" as to the consequence determination. *See Dagnan*, 641 S.W.3d at 759. For example, the hearing transcript and subsequent order did not identify any of the relevant factors identified by *Dagnan* or other panels of this Court. *See id.* at 759 n.5; *State v. Rand*, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024). Because "[s]imply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy" the trial court's burden with respect to the consequence determination, we are constrained to remand for the trial court to place on the record its reasoning for the consequence imposed. *See Dagnan*, 641 S.W.3d at 758.

## II.     Validity of Probation Violation Warrant

The defendant also appeals the revocation of her probation on the grounds that the warrant alleging her probation violation was invalid. However, the record does not reflect the defendant ever filed a motion before the trial court to challenge the alleged invalid warrant. The defendant failed to argue, and the trial court never considered, whether the violation warrant was invalid. An issue raised for the first time on appeal is waived. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). Here, the defendant raised the issue of an invalid warrant for the first time on appeal, and therefore, we conclude the defendant has waived this issue.

## III.     Denial of Speedy Trial

The defendant also argues her constitutional rights were violated because she was denied a speedy trial. Again, however, the record does not reflect that the defendant raised this issue before the trial court. Because this issue was raised for the first time on appeal, it is deemed waived. *See id.*

## IV.     Application of Exclusionary Rule

The defendant alleges the trial court erred by failing to exclude evidence obtained by law enforcement during and after her arrest. While the defendant's trial counsel

successfully argued for the exclusion of said evidence in the underlying DUI charge, the same exclusionary rules do not apply to revocation proceedings because a probation violation hearing is not part of the criminal prosecution process. *State v. Hayes*, 190 S.W.3d 665, 669 (Tenn. Crim. App. 2005) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). "Revocation proceedings are informal, as evidenced by relaxed rules regarding the admissibility of evidence, the absence of a jury, and a preponderance of evidence burden of proof." *See id*. at 669. Therefore, petitioners are not entitled to receive the full range of due process rights. *Id.* However, Tennessee has recognized that evidence obtained through police harassment or evidence obtained in a particularly offensive manner may be excluded. *Id.* at 670. "Generally, harassment requires more than mere evidence that the police knew the accused was on probation at the time of the encounter." *Id.*

Here, there was no evidence in the record that the police officers engaged in harassment or pursued offensive techniques to acquire evidence of the defendant's violation. Therefore, the exclusionary rule is inapplicable, and this issue is without merit.

## V. Ineffective Assistance of Counsel

The defendant alleges she was provided with ineffective assistance of counsel at the revocation hearing. Specifically, the defendant asserts that counsel failed to ask follow-up questions of the State's witnesses and failed to introduce surveillance video from Subway on the night of her arrest.

While the right to counsel is constitutionally guaranteed in criminal proceedings, there is no guaranteed right to counsel at a revocation hearing. *State v. Eldridge*, No. M2004-01080-CCA-R3-CD, 2006 WL 359665, *3 (Tenn. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 798-90, 93 S. Ct. 1756, 1763, 36 L. Ed. 2d 656 (1973)). "The effectiveness of counsel at a revocation hearing does not raise a constitutional issue unless counsel's performance was so defective that one of the defendant's due process rights was violated." *Id.*

Here, the defendant has not presented proof regarding what additional questioning of the witnesses would have revealed. Therefore, the defendant has failed to show how counsel's performance was deficient. Further, as to the supposed surveillance video footage of Subway, Officer Pace testified that the surveillance cameras on the night of the defendant's arrest were inoperable. Accordingly, this issue is without merit.

## VI. Criminal Contempt Charge

The defendant argues the trial court erred when it convicted her of criminal contempt. Tennessee Rule of Criminal Procedure 42(a) allows a judge to summarily find a defendant guilty of direct criminal contempt for willful misconduct committed in the court's presence. Tenn. R. Crim. P. 42(a). If a court finds a defendant to be in contempt, the court shall enter an order on the record reciting the facts and signed by the judge. *Id*. "A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law." *In re Brown*, 470 S.W.3d 433, 442 (Tenn. Ct. App. 2015) (citing *Daniels v. Grimac*, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010)). Because a trial court's use of its contempt power is discretionary, appellate courts review a trial court's contempt order using the abuse of discretion standard. *Id.*

Here, at the end of the revocation hearing, the defendant began a course of disruptive behavior drawing several warnings from the trial court. The defendant was repeatedly told not to speak and was warned, "[y]ou're very close to being in contempt of court. Now, all I want you to do is not say anything else." The defendant then continued to speak, disrupting the trial court. Finally, the defendant called the trial court "nothing but a gangster Sumner County cartel." The trial court found the defendant to be in contempt and ordered her to serve an additional ten days consecutively to her underlying sentence. On June 4, 2024, the trial court issued a contempt order reciting the above facts, signed the order, and entered the order into the record in compliance with Tennessee Rule of Criminal Procedure 42(a).

We conclude the trial court's order was done in compliance with the rule and can find no abuse of discretion. This issue is without merit.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the revocation of the defendant's probation but remand for the trial court to make findings concerning the consequence imposed for the revocation. All other issues raised by the defendant are without merit or waived.

s/ J. Ross Dyer
J. ROSS DYER, JUDGE

- 8 -