# IN THE COURT OF APPEALS OF TENNESSEE
# AT MEMPHIS
### February 25, 2015 Session

## IN RE: JOSEPH BROWN

### Direct Appeal from the Juvenile Court for Shelby County
### No. S9206     Curtis S. Person, Jr., Judge

---

### No. W2014-00825-COA-R3-JV- Filed March 23, 2015

---

An attorney was summarily punished for direct criminal contempt.  The attorney appeals, alleging numerous procedural errors and claiming that his actions did not rise to the level of contemptuous behavior.  Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Andre C. Wharton and Alexander Wharton, Memphis, Tennessee, for the appellant, Joesph Brown.

Herbert H. Slatery, III, Attorney General and Reporter, Andree S. Blumstein, Solicitor General and Kathryn A. Baker, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

The basis of this appeal is a finding of contempt made on March 24, 2014, by Shelby County Juvenile Court Magistrate Harold Horne.  On that date, a litigant appeared *pro se* for a hearing before Magistrate Horne.  Magistrate Horne determined that no notice of the hearing had been provided to the opposing party or counsel and therefore continued the hearing for one month.  Later that same day, attorney and former judge Joseph Brown appeared before Magistrate Horne and addressed the court on behalf of the aforementioned litigant.  At the outset, Mr. Brown indicated his awareness that the hearing had already been continued until a later date.  Nevertheless, Mr. Brown insisted

that the case against the litigant should be "dismissed flat out" due to deficiencies he perceived in the record, and he claimed that notice to the opposing party was not necessary prior to dismissal.  Magistrate Horne reiterated that the matter would be resolved at the April 24 hearing.  The following exchange ensued:

MR. BROWN: If it pleases the tribunal, I will file a Petition for Habeas Corpus and close this place down like I did before if you make her come back here one more time.

THE COURT: Mr. Brown, you are very close to finding yourself in contempt.

MR. BROWN: Excuse me, on what authority do you sit by the way?
As a former judge here, we have a rule in the Thirtieth Judicial District.  It says every single Magistrate Referee has to be unanimously approved by every Circuit, Chancery, and Criminal Court Judge.  I don't recall that your name's ever been submitted, sir.
This tribunal on a General Sessions Court's authority is insufficient to establish you.  Therefore I challenge your authority to hear it.
And by the way, what is that, Magistrate, sir, with due respect.

THE COURT: Mr. Brown, the Court finds you in contempt.

MR. BROWN: Here's ten dollars. That's all you've got on me.

THE COURT: I sentence you to twenty-four day -- for twenty-four hours in the Shelby County jail.

MR. BROWN: You're out of it. The maximum---

THE COURT: You may have a seat.

MR. BROWN: I'm not. Ten dollars. That's all you've got. Twenty. Take the two.

THE COURT: Get the bailiffs.

MR. BROWN: Go find the law or I'm reporting you to the Court of

2

Judiciary. I'll have you charged with violation of process. Now you want to get into this, let's get into it. This sorry operation needs to stop.

THE COURT: Twenty-four hours in the Shelby County jail for contempt. You may have a seat.

MR. BROWN: Excuse me.

THE COURT: Do you wish to have another twenty-four hours?

MR. BROWN: If you try to do this you need to straighten yourself up and you cite your authority.

THE COURT: Do you wish to have a second day, Mr. Brown?

MR. BROWN: What did you say?

THE COURT: Do you wish to have a second day?

MR. BROWN: A second date?

THE COURT: Day.

MR. BROWN: Day?

THE COURT: Yes, sir.

MR. BROWN: I tell you what. You cite the authority. You find it. I looked it up before I came in here. You have ten dollars maximum contempt jurisdiction. Now you jump in here.

THE COURT: That's two days in the Shelby County jail. Do you wish to continue?

MR. BROWN: Okay. Okay, I'll tell you what. I'll be out of here very shortly on a Petition for Habeas Corpus, and I'll bring up all these problems, and guess what, you might not be operating tomorrow.

3

THE COURT:     Have a seat, Sir.

MR. BROWN:     Okay, as a courtesy to the officers, I'll do that. Mmm-huh.

THE COURT:     Alright.

MR. BROWN:     It's a circus, sir.

THE COURT:     That's three days.

MR. BROWN:     You can do all you want.

THE COURT:     Four days.

MR. BROWN:     You don't have the jurisdiction I had to do it. You've got to be up above a trial judge. You've got ten dollars.[1]

THE COURT:     Five days.

MR. BROWN:     I offered you ten dollars.

At that point, Mr. Brown was physically removed from the courtroom and escorted to the Shelby County Jail.

Later that afternoon, Mr. Brown's attorneys filed a motion requesting that the juvenile court set bail for Mr. Brown or release him on his own recognizance. This motion was denied by order of Juvenile Court Judge Curtis Person. Counsel for Mr. Brown then filed a "Motion Appealing Juvenile Court Finding of Contempt and Denial of

---

[1]Despite Mr. Brown's challenges to the authority of Magistrate Horne in open court, he does not raise any issue on appeal regarding Magistrate Horne's authority. He does not suggest that a juvenile court magistrate lacks authority to order imprisonment of a contemner, nor does he claim that Magistrate Horne was never "approved" by the other judges in the district, as he alleged in court on the date of the incident. We note, however, that the juvenile court "may punish a person for contempt of court for disobeying an order of the court or for obstructing or interfering with the proceedings of the court or the enforcement of its orders by imposing a fine or imprisonment[.]" Tenn. Code Ann. § 37-1-158. *See also State v. Ream*, No. M2007-00264-COA-R3-JV, 2008 WL 4367457, at *2 n.2 (Tenn. Ct. App. Sept. 18, 2008) (noting that the juvenile court has "the same authority as circuit or chancery court" with regard to contempt). In addition, a juvenile court magistrate "has the powers of a trial judge" in the conduct of proceedings. Tenn. Code Ann. § 37-1-107(c).

Appeal Bond" in the Criminal Court of Shelby County. Criminal Court Judge James Beasley entered an order "granting" the appeal from the juvenile court's finding of contempt and releasing Mr. Brown on his own recognizance pending a hearing of the "appeal."

The following day, March 25, 2014, Magistrate Horne entered written "Findings and Recommendations" regarding the matter of Mr. Brown's contempt. The written findings detailed the court's encounter with the unrepresented litigant earlier in the day and the fact that the court reset the matter for April 24. The findings then describe the incident with Mr. Brown as follows:

> After the passage of some considerable time Mr. Joseph Brown came forward stating that he wished to address the Court on behalf of [the litigant]. The bottom line of his lengthy diatribe was that he wanted the case dismissed and he did not agree that the petitioner's counsel was entitled to notice of the hearing.
> During the course of Mr. Brown's remarks it became clear that he was entering on a course designed to disrupt and denigrate the court proceedings as his comments became progressively more disrespectful and it appeared that he was willfully and intentionally baiting the court. The manner and demeanor of his person was as one who sought to foment a riot in the Courtroom and he was addressing the audience more so than the Court.
> At this point Mr. Brown was admonished to stop and that his actions amounted to contempt. He continued his tirade and indulged in willful misconduct clearly intended to embarrass, hinder and obstruct the administration of justice; and to derogate the court's authority and dignity, thereby bringing administration of law into disrepute. Additionally, the Court was of the opinion that Mr. Brown was attempting to provoke a riot in a courtroom which was filled with over 70 citizens and that a failure to act quickly would disrupt the orderly progress of the Court's hearings. (It should be noted that while a recording of the proceedings will show the words used and their tone, the recording will not show Mr. Brown's directing some of his invective toward the "audience" rather than the Magistrate).
> The Court informed Mr. Brown that he was in contempt and that he would be sentenced to 24 hours confinement and ordered the Bailiff[s] to remove him from the courtroom. Thereafter Mr. Brown continued his willful misconduct and the sentence was increased to 2 days. He at one point pulled out one or two ten ($10.00) bills and offered the payment for his actions stating that he had looked up the Court's authority in contempt

5

cases before coming to the court and the limit of the Court's authority was $10.00. As he continued his ranting the sentence was progressively increased to 3 days, then 4 days, then 5 days at which point the bailiffs managed to remove him from the courtroom.

The Court finds that Mr. Joseph Brown's conduct was a willful, deliberate, orchestrated event designed to show his disrespect for the judicial system and that his conduct amounted to an actual, direct, obstruction of, and interference with, the administration of justice. That he was offered an opportunity to stop his charade and he refused to regain control of himself, engaged in escalating confrontation which required that he be physically removed from courtroom.

Magistrate Horne's written findings further stated and recommended that "Mr. Joseph Brown is in direct criminal contempt of this Court and that he be committed to the Sheriff of Shelby County to be confined for a period of five (5) days." These findings and recommendations were confirmed as an order of the juvenile court by Judge Person on March 25, 2014.

The judges of the Criminal Court of Shelby County requested that a special judge be assigned to hear the "appeal" of Mr. Brown's contempt matter due to having previously served with Mr. Brown as "a fellow judge." The Tennessee Supreme Court assigned the case to the Honorable Paul G. Summers, Senior Judge. Judge Summers requested briefing as to whether the appeal from the Juvenile Court's finding of contempt should proceed in Criminal Court or the Court of Appeals pursuant to the Tennessee Rules of Appellate Procedure. Thereafter, Mr. Brown filed a notice of appeal to this Court (still within thirty days of the Juvenile Court's contempt finding).[2] Judge Summers eventually concluded that Mr. Brown's "appeal" to criminal court was improvidently filed, and he entered an order that "remanded and transferred" the matter back to juvenile

---

[2]"Contempt proceedings are sui generis and are incidental to the case out of which they arise." *Baker v. State*, 417 S.W.3d 428, 435 (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003)). Accordingly, "[a] judgment of contempt fixing punishment is a final judgment from which an appeal will lie." *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn.Ct.App.1989) (citing *State v. Green*, 689 S.W.2d 189 (Tenn. Cr. App. 1984)). The judgment of contempt becomes final "upon entry of the judgment imposing a punishment therefore." *State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008) (citing *Green*, 689 S.W.2d at 190); *see also Rose v. Rose*, No. E2005-01833-COA-R3-CV, 2006 WL 1132086, at *4 (Tenn. Ct. App. Apr. 27, 2006) ("a judgment of contempt, summary or otherwise becomes final upon the entering of punishment therefor"); *Bailey v. Crum*, 183 S.W.3d 383, 387 (Tenn. Ct. App. 2005). "It matters not that the proceedings out of which the contempt arose are not complete." *Moody v. Hutchison*, 159 S.W.3d 15, 31 (Tenn. Ct. App. 2004) (citing *Green*, 689 S.W.2d at 190). An order that imposes punishment for contempt "is a final appealable order in its own right, even though the proceedings in which the contempt arose are ongoing." *Coffey v. Coffey*, No. E2012-00143-COA-R3-CV, 2013 WL 1279410, at *5 (Tenn. Ct. App. 2013) (citing *Bailey v. Crum*, 183 S.W.3d 383, 387 (Tenn. Ct. App. 2005)).

court. The record before us contains the technical record, transcripts from the proceedings in juvenile court, an audio recording of the proceedings in juvenile court, as well as those from the proceedings in criminal court.

## II. ISSUES PRESENTED

Mr. Brown presents the following issues for review on appeal, which are quoted from his brief:

1. Whether the lower court erred in not affording due process and properly citing Appellant with contempt because the Court was so intertwined and embroiled with the matter that it should have been disqualified from presiding over the matter?

2. Whether the lower court properly followed Tennessee Rule of Criminal Procedure 42(a) when it did not state how Appellant was in contempt during the proceedings, nor include sufficient basis in its disposition of the matter?

3. Whether the lower court erred in finding that Appellant's zealous advocacy for his client amounted to contemptuous behavior?

The Tennessee Attorney General's office filed a brief on appeal as attorney of record for the State of Tennessee, urging this Court to affirm the juvenile court's finding of contempt. For the following reasons, we affirm the decision of the juvenile court and remand for further proceedings.

## III. STANDARD OF REVIEW

"'A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law.'" *Daniels v. Grimac*, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010) (quoting *Watkins, ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *3 (Tenn. Ct. App. May 13, 2009)). Because a trial court's use of its contempt power is discretionary, appellate courts review a trial court's contempt citation using the abuse of discretion standard. *Outdoor Mgmt., LLC v. Thomas*, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007). "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166,

176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). The abuse of discretion standard

> does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives, and thus envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'"

*Id.* (quoting *Henderson*, 318 S.W.3d at 335 (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 525 (Tenn. 2010))).

## IV. DISCUSSION

"[T]he inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts." *Black v. Blount*, 938 S.W.2d 394, 397-98 (Tenn. 1996) (citing *State v. Galloway*, 45 Tenn. 326, 331 (1868)).

> "The power of courts to punish for contempt is of immemorial antiquity, and is inherent in all courts as a necessary power belonging to them in order to enable them to accomplish the purposes for which they were designed; that is, the orderly trial and decision of causes, the enforcement of public order, the prevention of interferences with their proceedings, and the enforcement of the due respect belonging to them as institutions of the country."

*Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013) (quoting *Graham v. Williamson*, 128 Tenn. 720, 164 S.W. 781, 782 (1914)). "The court's power to punish parties for courtroom misconduct is 'absolutely essential to the smooth functioning of the judicial system.'" *Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at *5 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dargil v. Terminix Int'l Co.*, 23 S.W.3d 342, 344 (Tenn. Ct. App. 2000)).

In Tennessee, conduct punishable as contempt is delineated in Tennessee Code Annotated section 29-9-102, which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

8

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Although "'acts constituting contempt cover a wide range,'" the "'most familiar forms of contempt are found in acts which hinder, delay, and obstruct the administration of justice[.]'" *Black*, 938 S.W.2d at 399 (quoting *Winfree v. State*, 175 Tenn. 427, 135 S.W.2d 454 (1940)).

Contempt can be either civil or criminal in nature. *Black*, 938 S.W.2d at 398. "Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights." *Id.* (citing *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 911 (1964)). Conversely, criminal contempt is "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Id.* (citing *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 127, 191 S.W. 974 (1917); *Gunn v. S. Bell Tel. & Tel. Co.*, 201 Tenn. 38, 41-42, 296 S.W.2d 843, 844-45 (1956)). Although criminal contempt may arise in the course of private civil litigation, criminal contempt proceedings "'in a very true sense raise an issue between the public and the accused.'" *Id.* (quoting *Daugherty*, 191 S.W. at 974). In punishing criminal contempt, "the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings." *Baker*, 417 S.W.3d at 438 (citations omitted). This appeal involves criminal contempt.

Contempt can be further classified as direct or indirect depending on whether the misbehavior occurred in the court's presence. *State v. Beeler*, 387 S.W.3d 511, 520 (Tenn. 2012).

This classification is important in criminal contempt cases because Tennessee Rule of Criminal Procedure 42 allows for a summary proceeding if the contemptuous conduct occurs before the court; but if not, certain

procedural protections must be observed, including notice, a hearing, and recusal if the contempt charged involves disrespect to or criticism of the judge.

*Id.* (citing Tenn. R. Crim. P. 42). Thus, direct and indirect contempt differ "in the minimal procedure that will satisfy the requirements of due process in each case." *Black*, 938 S.W.2d at 398. Direct contempt is based on acts committed in the presence of the court and may be punished summarily. *Id.* "Tennessee courts have held that direct acts of contempt include acts committed in the presence of the court that are disrespectful, unreasonable, or contemptuous; use of violent or loud language or noises; or 'turbulent' conduct that disrupts the proceedings." *Watkins ex rel. Duncan v. Methodist Healthcare Sys.*, W2008-013490COA-R3-CV, 2009 WL 1328898, at *6 (Tenn. Ct. App. May 13, 2009). Indirect contempt occurs outside the presence of the court and may be punished only after the accused has been given notice and an opportunity to respond to the charges at a hearing. *Black*, 938 S.W.2d at 398 (citing *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)). Courts imposing criminal contempt sanctions for acts not committed in their presence must comply with more stringent procedural standards. *State v. Patty*, No. 03C01-9812-CC-00430, 1999 WL 627395, at *4 (Tenn. Crim. App. Aug. 19, 1999). Specifically, at the time of the proceedings below, Tennessee Rule of Criminal Procedure 42 provided the following with regard to criminal contempt:

**(a) Summary Disposition.** A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record.

**(b) Disposition on Notice and Hearing.** A criminal contempt shall be prosecuted on notice, *except as provided in subdivision (a)* of this rule.

(1) Content of Notice. The criminal contempt notice shall:

(A) state the time and place of the hearing;

(B) allow the defendant a reasonable time to prepare a defense; and

(C) state the essential facts constituting the criminal contempt charged and describe it as such.

(2) Form of Notice. The judge shall give the notice orally in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by a show cause or arrest order.

(3) Release on Bail. The criminal contempt defendant is entitled to admission to bail as provided in these rules.

(4) Disqualification of Judge. When the contempt charged involves

10

disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing, except with the defendant's consent.

(5) Punishment Order. If the court finds the defendant guilty of contempt, the court shall enter an order setting the punishment.

Tenn. R. Crim. P. 42 (2013) (emphasis added).[3]  "A punishment imposed summarily is one imposed 'without ceremony or delay.'" *Watkins*, 2009 WL 1328898, at *7 (quoting *Black's Law Dictionary* 1435 (6th ed. 1990)).

"Rule 42(a) is permissive in nature." *Watkins*, 2009 WL 1328898, at *5. Accordingly, criminal contempt may be adjudicated summarily if the judge certifies that he or she saw or heard the conduct and that it was committed in the presence of the court, or it may be adjudicated by judgment after notice and a hearing. *State v. Provencio*, No. E2005-01253-CCA-R3-CD, 2005 WL 3088078, at *2 (Tenn. Crim. App. Nov. 18, 2005). A trial judge has discretion to punish criminal contempt by summary disposition if the judge certifies that the conduct constituting contempt was committed in the presence of the court. *State v. Smith*, No. W1999-00814-CCA-R3-CD, 2000 WL 1664280, at *6 (Tenn. Crim. App. Oct. 23, 2000).  "The determination of what action constitutes contempt necessitating immediate summary disposition rests within the discretion of the trial judge." *Id.*  "Unfortunately, our courts are occasionally subjected to genuinely disruptive conduct." *Beeler*, 387 S.W.3d at 520 n.5.  "In such cases, exercise of the summary contempt power may be necessary to restore order, but Rule 42(a) presupposes that the observed conduct is contemptuous; if the court has any doubt on this point, a summary proceeding is not the appropriate means for adjudicating the matter." *Id.* Summary punishment "is reserved for those circumstances in which it is essential" because it "departs, often dramatically, from traditional notions of due process that are the hallmarks of criminal justice." *State v. Turner*, 914 S.W.2d 951, 957 (Tenn. Crim. App. 1995).  "As a result, courts universally agree that summary contempt powers should be used sparingly, and even then only in cases of 'exceptional circumstances.'" *Id.* (quoting *Harris v. United States*, 382 U.S. 162, 164-65 (1965)).  Determining whether exceptional circumstances exist "is generally left to the sound discretion of the trial court." *Watkins*, at *6; *see also Provencio*, 2005 WL 3088078, at *3 ("the determination of what constitutes an exceptional circumstance [is left] to the discretion of the trial court").

The courts' summary contempt authority "must be viewed in light of its express purpose and function," which is "to punish certain conduct when necessary to vindicate

---

[3]Rule 42(b) was amended effective July 1, 2014, to replace the word "defendant" with the word "alleged contemner," to delete reference to a "show cause order," and to add "an attorney representing a party in the case" to the list of those who may apply for issuance of a notice of criminal contempt pursuant to (b)(2).  These changes are not material to the issues on appeal.

the dignity and authority of the court." *Turner*, 914 S.W.2d at 956. "Summary contempt is appropriate when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a . . . trial . . . . [and] may be necessary to restore order." *Beeler*, 387 S.W.3d at 520 n.5 (internal quotations omitted).

Mr. Brown's first issue on appeal is whether Magistrate Horne proceeded inappropriately when finding him in contempt "because the court's direct authority was so intertwined with the matter that the court should have applied Tennessee Rule of Criminal Procedure 42(b)." Mr. Brown contends that this case involves indirect contempt and claims that the magistrate should have afforded him all of the procedural protections set forth in Rule 42(b), including notice of the charge of contempt and a separate hearing before a different judge with either testimony from the magistrate or a review of the recording of the incident.

Despite Mr. Brown's insistence to the contrary, this case clearly involves direct criminal contempt "based on acts committed in the presence of the court." *Black*, 938 S.W.2d at 398. Rule 42(a) governs the manner by which a judge may summarily punish a person who commits criminal contempt in the judge's presence. "The procedures governing prosecutions of *indirect* criminal contempt . . . are outlined in Rule 42(b)." *Id.* (emphasis added). "[A] trial judge is not disqualified from summary proceedings under Rule 42(a) involving acts of direct contempt." *Watkins*, 2009 WL 1328898, at *8. The subpart of Rule 42(b) that "specifically disqualifies the trial judge from presiding does not apply to direct criminal contempts." *Turner*, 914 S.W.2d at 959 n.13.

In this case, we cannot say that the magistrate abused his discretion in concluding that exceptional circumstances existed to warrant summarily punishing Mr. Brown for direct criminal contempt. The conduct occurred in the presence of the judge and constituted "willful misbehavior . . . in the presence of the court, or so near thereto as to obstruct the administration of justice," within the meaning of Tennessee Code Annotated section 29-9-102(1). "Clearly, a trial judge has the authority to punish direct contempt summarily when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice." *Watkins*, 2009 WL 1328898, at *5. "Acts of willful disobedience or disrespectful conduct, by their nature, pose the risk of obstructing the administration of justice." *Turner*, 914 S.W.2d at 958. Exceptional circumstances justifying summary contempt "certainly include acts threatening the judge or disrupting a hearing or obstructing court proceedings, or other unusual situations . . . where instant action is necessary to protect the judicial institution itself." *Id.* at 957 (internal quotations omitted). Some factors for consideration are "the reasonably expected reactions of those in the courtroom, the manner in which the remarks are delivered, the delay in the proceedings caused by a disrespectful outburst, and the failure to heed explicit directives of the court." *Id.* at 958. Here, Mr. Brown expressed clear

disrespect for the magistrate's ruling that the case would be heard at a later date and threatened to "close this place down like I did before if you make her come back here one more time." When the magistrate warned Mr. Brown that he was close to being held in contempt, Mr. Brown addressed the magistrate in a condescending manner and challenged the magistrate's authority. The magistrate found it "clear that [Mr. Brown] was entering on a course designed to disrupt and denigrate the court proceedings as his comments became progressively more disrespectful and it appeared that he was willfully and intentionally baiting the court," with a manner and demeanor of "one who sought to foment a riot in the Courtroom . . . addressing the audience more so than the Court." The magistrate found that Mr. Brown "indulged in willful misconduct clearly intended to embarrass, hinder and obstruct the administration of justice; and to derogate the court's authority and dignity, thereby bringing administration of law into disrepute." The magistrate specifically noted that the courtroom "was filled with over 70 citizens and that a failure to act quickly would disrupt the orderly progress of the Court's hearings." According to the magistrate, Mr. Brown was "directing some of his invective toward the 'audience' rather than the Magistrate." Mr. Brown produced ten-dollar bills as payment for his actions and claimed that the magistrate had no authority to impose additional punishment, adding, "I looked it up before I came in here." When the magistrate said, "You may have a seat," Mr. Brown defiantly responded, "I'm not." Mr. Brown threatened to report the magistrate to the Court of Judiciary and have him charged with violation of process. He referred to the court as a "sorry operation" and a "circus" and told the magistrate to "straighten yourself up."[4] Mr. Brown was eventually removed from the courtroom by the bailiffs.

Mr. Brown argues on appeal that his conduct did not rise to the level of contemptuous behavior and that he was simply "respectfully and zealously" advocating for his client without obstructing the administration of justice. We respectfully disagree. "'Court proceedings are to be conducted in a civil and dignified manner, and when one strays from that course, their conduct risks obstructing the administration of justice.'" *Parris*, 2007 WL 2713723, at *6 (quoting *Provencio*, 2005 WL 3088078, at *2). We find the circumstances of this case comparable to those in *Turner*. In that case, an attorney began "arguing with the Court in a disrespectful and loud voice" after an unfavorable ruling. *Turner*, 914 S.W.2d at 954. The trial judge urged the attorney to calm down, and the attorney responded by saying, "don't you raise your voice to me." *Id.* The trial judge found the attorney in summary contempt for his outburst and assessed a $50 fine and ten days in jail. The exchange escalated from that point, with the attorney commenting in a loud and disrespectful voice, "I don't care what you do. Send me to jail"; "I am not going to jail"; "You think you are powerful on that bench, send me to jail"; "You are not going

_____

[4]We have the benefit of an audio recording of the incident in the record on appeal, and our review of the recording indicates that the magistrate remained calm and professional throughout the exchange.

to have anything to do with any of my cases. I am not afraid of you or your contempts." *Id.* The trial court ultimately entered three judgments of contempt against the attorney. On appeal, the court of criminal appeals recognized that there are competing interests at stake when a contemner is counsel for a litigant in the underlying proceedings. *Id.* at 958. In that situation,

> [A court has a] duty to safeguard two indispensable conditions to the fair administration of criminal justice: (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling."

*Id.* (quoting *Offutt v. United States*, 348 U.S. 11, 13 (1954)). It is "'essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases.'" *Id.* (quoting *In re McConnell*, 370 U.S. 230, 236 (1962)). Still, the court ultimately affirmed the trial judge's findings that the attorney engaged in willful misbehavior in the presence of the court, and it upheld the three judgments of contempt:

> The record reflects counsel's distemper in response to a ruling of the trial judge and his apparent refusal to gain control of himself. It further reflects an escalating confrontation in which appellant had to be physically removed from the courtroom. The conduct resulted not only in the temporary delay of the trial for purposes of removing the jury, but also in the mistrial of the proceedings. We have no difficulty concluding that appellant's conduct was willful and that its effect obstructed the administration of justice. Given this direct confrontation with the trial judge and this display of boisterous conduct which required removal from the courtroom, we find that the trial court did not abuse its discretion in invoking summary contempt procedures.

*Turner*, 914 S.W.2d at 961.

This case is also analogous to *State v. Whetstone*, No. E2010-02333-CCA-R3-CO, 2011 WL 5147795 (Tenn. Crim. App. Oct. 31, 2011), where another attorney was held in direct criminal contempt for disruptive conduct. The attorney interrupted the court's proceedings to complain about various matters such as the delay in the start of his hearing. The attorney was "angry, contentious and threatening" and "basically lost his temper to the point he threatened" the judge with an ethics complaint. *Id.* at *5. During the course of the attorney's "temper tantrum," the judge summarily found him in contempt and imposed three ten-day periods of confinement, to run consecutively. *Id.* at

*11. On appeal, the Tennessee Court of Criminal Appeals affirmed the summary finding of direct criminal contempt. *See also In re Bowling*, No. E2007-00262-COA-R3-JV, 2007 WL 2780378, at *5 (Tenn. Ct. App. Sept. 25, 2007) (affirming a finding of direct criminal contempt against an attorney who questioned a new judge's experience in juvenile court and impugned the judge's character during a heated exchange, repeatedly raising her voice to talk over the judge and refusing to accept the judge's given explanation).

The Tennessee Supreme Court has recognized that additional considerations come into play when an attorney behaves disrespectfully in court:

> [W]e explicitly hold that criminal contempt of court which obstructs the administration of justice includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute. We also emphasize that disrespectful conduct by an attorney has a greater impact upon the dignity of a court than does disrespectful conduct of a lay person. Public respect for the law derives in large measure from the image which the administration of justice presents. Lawyers play an integral role in the administration of justice and, as such, their conduct can have a great influence upon the extent to which the proceedings are perceived as fair and dignified by jurors, defendants, witnesses, and spectators. Accordingly, a lawyer's allegations of inequity and unfairness are uniquely denigrating to the dignity of the proceedings. *See generally Matter of Campolongo*, 495 Pa. 627, 435 A.2d 581 (1981).

*Black*, 938 S.W.2d at 401.

On appeal following a finding of criminal contempt, "the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings." *Daniels*, 342 S.W.3d at 517 (citing *Watkins*, 2009 WL 1328898, at *3).

> We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

*Black*, 938 S.W.2d at 399 (citing *Daugherty*, 137 Tenn. at 127, 191 S.W. at 974).

After carefully reviewing the record, we find that the evidence does not

15

preponderate against the trial court's findings, and the trial court did not abuse its discretion in exercising its permissive discretionary authority to summarily punish Mr. Brown for direct criminal contempt. *See Watkins*, 2009 WL 1328898, at *5. The magistrate did not apply an incorrect legal standard, reach an illogical result, resolve the case on a clearly erroneous assessment of the evidence, or rely on reasoning that caused an injustice. *See Gonsewski*, 350 S.W.3d at 105 (defining an abuse of discretion). The imposition of summary punishment was justified given Mr. Brown's boisterous conduct in the courtroom and his failure to obey the trial court's directives. The magistrate was within his discretion in finding that these were exceptional circumstances justifying the extraordinary remedy of summary punishment. Here, summary punishment was in order, and the magistrate did not err or otherwise violate Mr. Brown's due process rights by the procedure employed.[5]

Mr. Brown alternatively argues on appeal that even if Rule 42(a) is applicable to this case, the magistrate failed to follow "proper procedure" under Rule 42(a), which provides:

> **Summary Disposition**. A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record.

Mr. Brown complains that the magistrate did not enter a written order reciting the facts regarding the finding of contempt until the day after the March 24 incident. The juvenile court issued a "mittimus" to the Sheriff of Shelby County on March 24, commanding the Sheriff to confine Mr. Brown in the county jail for five days because he had been found guilty of "contempt committed in the presence of the court." However, the magistrate's written findings and recommendations were not issued or approved by the juvenile court judge until March 25. Mr. Brown seems to argue that he could not be incarcerated for direct criminal contempt until a written order was drafted and entered in the record setting forth in detail the reasons for the finding of contempt. We respectfully disagree. Rule 42(a) clearly states that a judge may "summarily punish" one who commits criminal contempt in the judge's presence if the judge certifies that he saw or heard the contemptuous conduct. Although Rule 42(a) requires the entry of a written order reciting the facts, it does not state that such an order must be entered in the record before the

---

[5]On appeal, Mr. Brown relies heavily on the Tennessee Supreme Court's decision in *State v. Green*, 783 S.W.2d 548 (Tenn. 1990), where the court reversed five findings of direct criminal contempt made by a trial judge who had a history of conflict with the defendant-attorney, including a pending contempt charge in a separate case and a complaint filed by the judge against the attorney before the Board of Professional Responsibility. *Green* is distinguishable from the case at bar.

16

judge can summarily punish the contemner. "A punishment imposed summarily is one imposed 'without ceremony or delay.'" *Watkins*, 2009 WL 1328898, at \*7 (quoting *Black's Law Dictionary* 1435 (6th ed. 1990)). "A summary proceeding is a '[s]hort, concise, and immediate proceeding' and a summary process is '[s]uch as is immediate or instantaneous, in distinction from the ordinary course, by emanating and taking effect without intermediate applications or delays.'" *Id.* Considering that summary contempt is appropriate "when there is a need to 'act swiftly,'" *Beeler*, 387 S.W.3d at 520 n.5 (citation omitted), we reject the notion that a trial judge must halt the proceeding in order to draft and enter a written order before the contemner can be punished.

Tennessee courts have declined to require strict compliance with Rule 42(a)'s requirements for a written order. In *State v. Johnston*, No. E2002-02028-CCA-R3-CD, 2003 WL 23094414, at \*4-5 (Tenn. Crim. App. Dec. 30, 2003), the trial judge found a non-party in contempt and entered a handwritten order on a warrant for a party, simply stating that the non-party was found in contempt for perpetrating a fraud on the court and therefore sentenced to ten days in jail to be served immediately. The Tennessee Court of Criminal Appeals found this "skeletal order" was "deficient under Rule 42(a)" because it failed to address the factual basis for the contempt and failed to indicate whether the judge saw or heard the contemptuous conduct or whether such conduct took place in the court's presence. *Id.* at \*4. That being said, however, the court was "not compelled to dismiss the proceedings altogether," as the non-party urged the court to do. *Id.* at \*5. The court explained that a trial court that "fails to follow the requisites of Rule 42(a) relative to the contents of its order holding an individual in contempt risks having its contempt finding dismissed on the basis of insufficient evidence to support the conviction." *Id.* (citing *Varley v. Varley*, 934 S.W.2d 659, 664 (Tenn. Ct. App. 1996)). However, the record before the court contained the trial judge's oral statements at the hearing in which he found the defendant's actions to be contemptuous and certified that the conduct occurred in his presence. The deficiency was merely the omission of this information from a written order. The court of criminal appeals concluded, "[a]lthough the better and correct practice would be for this information to be included in the order as required by Rule 42(a), the defendant has not proven that he was harmed by the technical deficiency, especially in view of the *de novo* appeal and circuit court judgment which followed." *Id.* at \*5.

In another case, a defendant challenged a trial court's contempt order because it "did not include either the factual basis of the charge or whether or not the contemptuous statement was made in the court's presence." *Provencio*, 2005 WL 3088078, at \*3-4. The court again found that "the preferred practice is certainly to include the requisite factual detail in the order," but the court nonetheless affirmed the contempt finding because the defendant failed to show that he was harmed by the "technical omission." *Id.* at \*4.

Here, we likewise find no harm to Mr. Brown from the juvenile court's one-day delay in entering its written order, which clearly contains the requisite factual basis for the contempt order. Although Mr. Brown claims he "was harmed by this insufficiency because [he] had no way to defend his actions in front of the Court and was immediately sentenced and sent to jail," we are not persuaded that Mr. Brown was prejudiced by the one-day delay. For the reasons already set forth in this opinion, Mr. Brown was not entitled to a hearing on the summary finding of direct criminal contempt. In sum, we find no reason to dismiss the contempt finding based on an alleged failure to comply with the procedures of Rule 42(a).[6]

## V. CONCLUSION

For the aforementioned reasons, the decision of the juvenile court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Joseph Brown, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

---

[6]Mr. Brown's brief on appeal vaguely asserts that this matter should be dismissed "due to double-jeopardy considerations." We are unable to definitively determine the basis for Mr. Brown's "double jeopardy" argument, but it appears to be based on his assumption that "the initial finding of contempt by Magistrate Horne was procedurally deficient and the subsequent Order of [the] Juvenile Court [was] void ab initio." We hold that the juvenile court's finding of contempt was neither procedurally deficient nor void ab initio. In any event, however, we deem the issue of double jeopardy waived because it was not listed as one of the issues presented for review in Mr. Brown's brief. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (citing *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)).