FILED
01/13/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 2, 2019

**SHERRILYN KENYON v. KERRIE ANN PLUMP ET AL.**

**Appeal from the Circuit Court for Williamson County**
**Nos. 2019-CV-18B, 47136B      Michael Binkley, Judge**

_____

**No. M2019-00944-COA-R3-CV**

_____

During a hearing on a party's motion for a protective order, the trial court summarily found the party to be in contempt of court and sentenced her to spend ten days in jail after she described members in the gallery as pedophiles and abusers of her children.  The party appealed, and we affirm the trial court's judgment and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Michele L. McGill, Franklin, Tennessee, for the appellant, Sherrilyn Kenyon.

Connie J. Chadwick, Thompson's Station, Tennessee, and Michael T. Fort and Sean Ross Aiello, Franklin, Tennessee, for the appellee, Lawrence R. Kenyon, II.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Sherrilyn Kenyon is the plaintiff in a tort and breach of contract action against Kerrie Ann Plump, Lawrence R. Kenyon, II, and Paco Kavanaugh, and Ms. Kenyon is the defendant in a divorce action filed by Mr. Kenyon.  The two cases were consolidated for purposes of discovery and pre-trial motions.  This appeal arises from the trial court's holding Ms. Kenyon in criminal contempt during a hearing on April 23, 2019, and sentencing her to spend ten days in jail.

On April 23, 2019, counsel for the parties were presenting arguments with regard to Ms. Kenyon's request for a protective order.  While the trial judge was speaking, Ms. Kenyon stood up and left the courtroom.  Addressing Ms. Kenyon's lawyers, the trial

judge said, "Y'all need to speak to your client. I'm not going to put up with that. Okay." The court then took a five-minute break. Before Ms. Kenyon returned to the courtroom, one of Mr. Kenyon's lawyers informed the judge that as Ms. Kenyon passed by on her way out of the courtroom, "the entire first row heard [Ms. Kenyon] call me a F'ing liar." The trial judge responded that he would "have to speak to her. . . . I can't just overlook that."

As a result of statements Ms. Kenyon made upon her return to the courtroom, the trial court held her in direct contempt of court and sentenced her to spend ten days in jail. In an order issued on May 1, 2019, the trial court described the facts leading up to its decision to hold Ms. Kenyon in contempt and to impose the jail sentence. The court wrote:

> During the course of the hearing, while the Court was responding to issues involving Ms. Kenyon's medical history and whether or not Ms. Kenyon had waived her request to have her medical information placed under seal for her protection, the Court noticed, as did other spectators, Ms. Kenyon abruptly and suddenly jumped up in a distracting fashion and, while she was clearly angry, stormed out of the courtroom. As Ms. Kenyon was storming out of the courtroom, the Court noticed she made some comment to attorney Connie Chadwick (hereinafter referred to as "Ms. Chadwick"), who represents Plaintiff/Defendant Lawrence R. Kenyon II (hereinafter referred to as "Mr. Kenyon). The Court could not hear the statement made by Ms. Kenyon, but certainly noticed Ms. Kenyon said something to Ms. Chadwick, which was apparently loud enough for courtroom observers to hear what Ms. Kenyon said to Ms. Chadwick based upon this Court's observation of the facial expressions on observers in the courtroom and their reaction to whatever was stated by Ms. Kenyon to Ms. Chadwick. Because of the obvious disruption in the presence of the Court and everyone else who was present in the courtroom, the Court took a recess and asked Ms. Connie Reguli, Esq. (hereinafter referred to as "Ms. Reguli") and Mr. Larry Crain, Esq. (hereinafter referred to as "Mr. Crain") to speak to their client, Ms. Kenyon, about her conduct before the Court proceeded. It was the Court's intention for Ms. Kenyon's counsel to speak to their client about Ms. Kenyon's conduct in storming out of the courtroom as she did. The Court then took a brief recess to allow Ms. Reguli and Mr. Crain to speak with their client with the hope Ms. Kenyon would understand her conduct of storming out of the courtroom would not be tolerated during the hearing.

> After the recess of approximately ten to fifteen minutes, the Court returned to the bench and went back on the record, at which time Ms. Reguli advised the Court Ms. Kenyon was going to excuse herself from the

courtroom "for a little bit," with Ms. Reguli's asking if that was okay with the Court. The Court approved the temporary absence of Ms. Kenyon. Mr. Crain then, on behalf of his client, Ms. Kenyon, apologized to the Court for his client's conduct.

. . . .

Then, in response, the Court stated the following:

> THE COURT: Well thank you. I appreciate the apology. I know things are sensitive, however I cannot put up with, nor will I tolerate, that type of attitude in this courtroom so — but thank you, I understand. If there are two lawyers that can handle their client it would be you two. So as long as she understands that I will not tolerate that. Okay.

At that time, Ms. Chadwick addressed the Court and stated to the Court that as Ms. Kenyon was passing her on her way out of the courtroom, Ms. Kenyon stated in a voice which could be heard by the entire first row of spectators, that Ms. Chadwick was a "F'ing liar." With this statement, I advised counsel for Ms. Kenyon because of Ms. Kenyon's conduct of cursing at one of the lawyers in the case as she exited the courtroom and stating it loud enough to be heard by spectators on the front row, I would have to speak with her again because I could not overlook her conduct toward Ms. Chadwick. After approximately five minutes, maybe longer, Ms. Kenyon reappeared in the courtroom. With her reappearance in the courtroom, the Court stated as follows:

> THE COURT: Mrs. Kenyon, if you will stand there at the podium for a minute. It's my understanding, ma'am, that as you were leaving the courtroom before I took a break, and I took a break because of the manner in which you left the courtroom, that you said loud enough for the people on the first row to hear you, make reference to this lawyer that she was a F'ing liar; is that correct?
>
> MRS. KENYON: Yes, sir.
>
> THE COURT: Okay. All right. That's two incidences where I could hold you in contempt of court and put you in jail. I'm not going to do that, but I want to be perfectly clear that I will not tolerate that type of conduct in this courtroom ever again. Is that clear?

MRS. KENYON: Yes, sir.

THE COURT: All right. I think you need to apologize to this lawyer too.

MRS. KENYON: Would you like me to apologize to the pedophile family while I'm at it, who molested my children?

THE COURT: I didn't hear you.

MRS. KENYON: I apologize to Ms. Chadwick.

THE COURT: No, I want you to repeat what you said, I didn't hear you.

MRS. KENYON: I'm also standing in front of the family that also abused my children and the pedophile, would you like me to apologize to them too, sir?

THE COURT: I cannot hear what you said, I'm sorry.

MRS. KENYON: I'm deaf, so I'm sorry –

THE COURT: I understand you are.

MRS. KENYON: I said, would you also like me to apologize to the family that abused and the pedophiles for my children too while I'm here, because I'm sorry, these are representing them [sic], I have a hard time. So it is a little emotional for me. I'm sorry, that I'm very emotional to be around them. It is just -- it is very hard to sit here while lies are being spoken about me and to be in a room with these people. And forgive me for being emotional and to know that I'm having lies told about me when I can't defend myself, and I apologize to that too. But any mother would be a little emotional, Your Honor, when she has to sit here, and I'm holding on to my career as best I can, and they're telling egregious lies. I don't know if you see what Ms. Chadwick filed, the lies she told about me.

THE COURT: All right, ma'am.

MRS. KENYON: Egregious lies.

THE COURT: Ma'am, enough.

At this time, the Court took approximately five minutes while still sitting on the bench to contemplate how to deal with Ms. Kenyon's last disruptive act by Ms. Kenyon's asking the Court, "Would you like me to apologize to the pedophile family while I'm at it, who molested my children"? During the Court's contemplation of how to deal with Ms. Kenyon's statement to the Court, the Court realized it had just forgiven Ms. Kenyon's contemptuous conduct for storming out of the courtroom and causing a disruption in the process of the litigation as well as calling Ms. Chadwick a "F'ing liar." In contemplating the last statement made to the Court by Ms. Kenyon, as well as the punishment to be imposed, if any, the Court believed under the circumstances it simply could not overlook Ms. Kenyon's disruptive and disrespectful conduct in the presence of the Court particularly since Ms. Kenyon's final statement was made immediately on the heels of her apologizing personally for her prior misconduct and once again making another disrespectful and disruptive comment. The following statement was then made by the Court:

> THE COURT: Okay, ma'am, I hate to do this, but I'm going to have to do it, I'm going to hold you in direct contempt of court. The statement you just made is deplorable. It does not show any rational basis whatsoever. I've given you -- I just got through saying to you that you -- your conduct in this court was contemptuous not only in storming out of the courtroom in the middle of the proceeding, but also in calling the lawyer a F'ing liar in the courtroom, and then right on the heels of that --
>
> MRS. KENYON: Your Honor, I was trying to help you –
>
> THE COURT: May I finish please? Right on the heels of that you made a statement to the people in the gallery that I cannot tolerate. So I find that you're in contempt of court. I will confine you for a period of ten days. I sincerely regret that I have to do that, but I must do that in order to maintain the integrity of this courtroom and these proceedings. All right, deputies –
>
> MS. REGULI: Your Honor, may I ask that she post a bond on that so that we can appeal that decision? She is entitled to

- 5 -

> bond on criminal contempt, and it would be an appearance bond and she's shown up for all appearances.
>
> THE COURT: I'll think about the bond, but take her away. She's in custody, put her in jail please.
>
> Later, in response to Ms. Reguli's request for an appeal bond, the Court set Ms. Kenyon's appeal bond at $2,500.

(Footnote omitted.)

Ms. Kenyon appeals the trial court's decision to hold her in contempt of court and impose a sentence of ten days in jail. She argues that the trial court abused its discretion by holding her in contempt for her statement about apologizing to the family who abused her children and the pedophiles as well. In the alternative, Ms. Kenyon argues that if the trial court did not abuse its discretion in holding her in contempt, the sentence of ten days in jail is excessive.

ANALYSIS

Courts are authorized to "inflict punishments for contempts of court" based on "[t]he willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice." Tenn. Code Ann. § 29-9-102(1). A court may impose a fine, imprisonment, or both as punishment for contempt. *Id.* § 29-9-103(a). Fines by circuit, chancery, and appellate courts are limited to fifty dollars, and imprisonment may not extend beyond ten days. *Id.* § 29-9-103(b). Tennessee Rule of Criminal Procedure 42(a) allows a judge to punish an individual who commits criminal contempt summarily, without notice and a hearing. The rule states:

> A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record.

TENN. R. CRIM. P. 42(a). "Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily." *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978). "'Tennessee courts have held that direct acts of contempt include acts committed in the presence of the court that are disrespectful, unreasonable, or contemptuous; use of violent or loud language or noises; or "turbulent" conduct that disrupts the proceedings.'" *In re Brown*, 470 S.W.3d 433, 444 (Tenn. Ct. App. 2015) (quoting *Watkins ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *6 (Tenn. Ct. App. May 13, 2009)).

"'A determination of contempt is within the sound discretion of the trial court,'" and it "'will not be disturbed absent an abuse of discretion.'" *Daniels v. Grimac*, 342 S.W.3d 511, 517 (Tenn. Ct. App. 2010) (quoting *Watkins*, 2009 WL 1328898, at *3); *see also In re Brown*, 470 S.W.3d at 442. The Tennessee Supreme Court has described the abuse of discretion standard of review thusly:

> An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, . . . the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06 (Tenn. 2011).

A finding of contempt can be either civil or criminal. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). When a person refuses or fails to comply with a court order, he or she may be held in civil contempt and may be imprisoned to compel compliance. *Id.* Imprisonment in that case is "remedial and coercive in character," and the contemnor's compliance with the order will gain him or her freedom from prison. *Id.* Criminal contempt, by contrast, is punitive in character and is "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Id.* (citing *Gunn v. S. Bell Tel. & Tel. Co.*, 296 S.W.2d 843, 844-45 (1956), and *State ex rel. Anderson v. Daugherty*, 191 S.W. 974, 974 (Tenn. 1917)). Unlike civil contempt, punishments for criminal contempt are generally unconditional and are unaffected by a person's conduct once the punishment has been imposed. *Id.*

The Court of Criminal Appeals addressed a trial court's use of the summary procedure for criminal contempt in *State v. Turner*, 914 S.W.2d 951 (Tenn. Crim. App. 1995). The court explained that contemptuous conduct that is punished summarily must be "'willful,' and it must [cause] an actual obstruction of the administration of justice." *Turner*, 914 S.W.2d at 956 (quoting Tenn. Code Ann. § 29-9-102(1)). A court is authorized to impose summary contempt in response to an individual's conduct "when

necessary to vindicate the dignity and authority of the court." *Id.*; *see In re Brown*, 470 S.W.3d at 442 ("The court's power to punish parties for courtroom misconduct is 'absolutely essential to the smooth functioning of the judicial system.'") (quoting *Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at \*5 (Tenn. Ct. App. Sept. 18, 2007)). As the United States Supreme Court has written,

> There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an "actual obstruction of justice," convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur. Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished . . . .

*Codispoti v. Pennsylvania*, 418 U.S. 506, 513-14 (1974) (quoting *In re McConnell*, 370 U.S. 230, 236 (1962)); *see also United States v. Wilson*, 421 U.S. 309, 319 (1975).

Summary punishment for contemptuous conduct "departs, often dramatically, from traditional notions of due process" and "is reserved for those circumstances in which it is essential." *Turner*, 914 S.W.2d at 957; *see also In re Brown*, 470 S.W.3d at 445. Trial courts have the discretion to determine the circumstances when summary punishment is essential, which "certainly include 'acts threatening the judge or disrupting a hearing or obstructing court proceedings,' or other 'unusual circumstances . . . where instant action is necessary to protect the judicial institution itself.'" *Turner*, 914 S.W.2d at 957 (quoting *Harris v. United States*, 382 U.S. 162, 164 (1965)). "Acts of willful disobedience or disrespectful conduct, by their nature, pose the risk of obstructing the administration of justice." *Id.* at 958. Summary contempt may be appropriate when an individual engages in contemptuous and disruptive conduct that requires a summary proceeding to restore order. *State v. Beeler*, 387 S.W.3d 511, 520 n.5 (Tenn. 2012).

The trial court in this case certified in its written order that "it heard conduct constituting contempt by Ms. Kenyon." The court emphasized that the contemptuous conduct for which it was sentencing Ms. Kenyon was limited to the following:

> MRS. KENYON: Would you like me to apologize to the pedophile family while I'm at it, who molested my children?
>
> THE COURT: I didn't hear you.
>
> MRS. KENYON: I apologize to Ms. Chadwick.
>
> THE COURT: No, I want you to repeat what you said, I didn't hear you.

MRS. KENYON: I'm also standing in front of the family that also abused my children and the pedophile, would you like me to apologize to them too, sir?

THE COURT: I cannot hear what you said, I'm sorry.

MRS. KENYON: I'm deaf, so I'm sorry –

THE COURT: I understand you are.

MRS. KENYON: I said, would you also like me to apologize to the family that abused and the pedophiles for my children too while I'm here, because I'm sorry, these are representing them [sic], I have a hard time. So it is a little emotional for me. I'm sorry, that I'm very emotional to be around them. It is just -- it is very hard to sit here while lies are being spoken about me and to be in a room with these people. And forgive me for being emotional and to know that I'm having lies told about me when I can't defend myself, and I apologize to that too. But any mother would be a little emotional, Your Honor, when she has to sit here, and I'm holding on to my career as best I can, and they're telling egregious lies. I don't know if you see what Ms. Chadwick filed, the lies she told about me.

THE COURT: All right, ma'am.

MRS. KENYON: Egregious lies.

THE COURT: Ma'am, enough.

The trial court then continued:

As stated upon the facts set forth above, this Court certifies the statements made by Ms. Kenyon concerning apologizing to the family who abused her children and apologizing to the pedophiles as well, occurred in the Court's presence as set forth in the transcript. The Court considers the statements made by Ms. Kenyon to be disrespectful, unreasonable, and was direct personal misbehavior amounting to contemptuous conduct under the facts of this case.

The Court further finds the conduct resulting in Ms. Kenyon's direct criminal conduct was willful misbehavior in the presence of the Court and caused an actual obstruction to the administration of justice to such an extent that her statements interrupted and delayed the proceedings.

> The Court carefully considered the punishment for Ms. Kenyon's conduct, and under the circumstances of Ms. Kenyon's behavior, the Court believes that ten (10) days in jail, with no fine, was certainly reasonable and appropriate under all the circumstances of this case.

The trial judge satisfied the requirements of Criminal Rule of Procedure 42(a) by certifying the criminally contemptuous conduct that he heard and by reciting the facts that constituted the contemptuous conduct in a written order that he signed and entered into the record.

Ms. Kenyon contends that she had no intention of being disrespectful to the court when she made the statements that formed the basis of the trial court's contempt finding and that she was not speaking out of turn, yelling, or being argumentative. She also contends that she was not willfully misbehaving. We disagree, noting that Ms. Kenyon made the statements at issue after leaving the courtroom without permission, while the court was addressing one of her motions, and after calling one of the opposing attorneys "a F'ing liar." Ms. Kenyon's abrupt departure and name-calling interrupted the court proceeding, and she made the statements at issue *in response to* the trial judge's request that she apologize to Ms. Chadwick, before actually apologizing. Before holding her in contempt, the trial judge put Ms. Kenyon on notice that he could hold her in contempt for storming out of the courtroom and saying what she did to Ms. Chadwick. However, this warning did not deter Ms. Kenyon from continuing her offensive behavior by describing some of the people in the gallery as pedophiles and abusers of her children. The trial court found Ms. Kenyon's statements disrespectful, disruptive, and unreasonable, and determined that they constituted "contemptuous conduct." We do not find, under the circumstances, that the trial court abused its discretion in determining that Ms. Kenyon's statements constituted "willful misbehavior" that "obstruct[ed] the administration of justice."

Ms. Kenyon contends that the trial court's sentence of ten days in jail is an excessive punishment. We disagree. The trial court was authorized to impose a sentence of imprisonment for up to ten days and/or a fine of up to fifty dollars. Tenn. Code Ann. § 29-9-103. Contrary to Ms. Kenyon's argument, the trial court did not impose the maximum punishment allowed because it did not impose a monetary fine in addition to the jail time. *See Turner*, 914 S.W.2d at 954, 961 (affirming three consecutive sentences of ten days' imprisonment for criminal contempt based on attorney's continuing disrespectful conduct towards trial judge).

- 10 -

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Sherrilyn Kenyon, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE