IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 11, 2018 Session

## GARY LEE ODOM v. RACHEL LEA ZAMATA ODOM

Appeal from the Circuit Court for Davidson County
No. 15D-195     Phillip R. Robinson, Judge

No. M2017-01702-COA-R3-CV

In this divorce action, the wife was found to be in "willful, direct and summary contempt of court beyond a reasonable doubt," based on her responses to the trial court judge's questions during a motion hearing. The wife has appealed. Discerning no error, we affirm the trial court's judgment. We decline to award to the husband his attorney's fees incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Daniel D. Warlick, Karla C. Miller, and Martin Stephen Sir, Nashville, Tennessee, for the appellant, Rachel Lea Zamata Odom.[1]

Jacqueline B. Dixon, Nashville, Tennessee, for the appellee, Gary Lee Odom.

**OPINION**

I.  Factual and Procedural Background

This appeal arises out of a divorce action involving the plaintiff, Gary Lee Odom, and the defendant, Rachel Lea Zamata Odom. The Third Circuit Court for Davidson County ("trial court") conducted a hearing in the pending divorce action on August 4,

---

[1] We note that, sadly, Mr. Warlick passed away during the pendency of this appeal. Following the filing of briefs in this matter, Ms. Miller and Mr. Sir presented an agreed motion to substitute Mr. Sir as counsel of record for Ms. Odom.

2017, regarding a motion to compel filed by Mr. Odom seeking responses to discovery.[2] Ms. Odom and her counsel were both present during the hearing, along with Mr. Odom's counsel.

During the course of the hearing, the trial court questioned Ms. Odom's counsel, and eventually Ms. Odom herself, concerning written discovery responses that the court deemed insufficient.[3] The hearing transcript reflects that the trial court repeatedly stated that Ms. Odom was being evasive in her answers to the questions asked, which focused on income and expenses related to her law practice. As the hearing continued and the discussion grew lengthy, the trial court judge expressed frustration concerning Ms. Odom's lack of candor, and the court ultimately threatened to hold Ms. Odom in contempt of court for her failure to sufficiently answer.

When the written discovery issues were resolved with Ms. Odom's promise to provide additional documentation, Mr. Odom's counsel asked the trial court to direct Ms. Odom to answer certain questions that she had refused to answer during her earlier deposition. One such question was the location of her current residence and whether she had entered into a lease with regard to that residence. The court again opined that Ms. Odom's answers were evasive, at one point stating, "my patience is really gone with you, Counsel, so you either answer it right now or I'm putting you in the custody of the Sheriff . . . ." The record reflects that Ms. Odom did not answer the question until the trial court admonished her once again.

The next question posed to Ms. Odom concerned whether she had engaged in sexual relations with anyone since the parties' separation and, if so, the identity of such person(s). Ms. Odom replied that she had engaged in sexual relations since her separation from Mr. Odom but that she could not remember the identity of any person with whom she had sexual relations. Ms. Odom stated that she could "look through journal entries and provide that information for you." When the trial court pressed her for information, Ms. Odom responded: "Your Honor, do you want to place me under arrest for not giving those names today, not being able to remember them . . . ." Following a lengthy discussion between the trial court judge and Ms. Odom, during which the court provided Ms. Odom with numerous opportunities to respond, the court eventually held Ms. Odom in contempt. The trial court judge stated in the record that Ms. Odom was "looking me in the face [and] lying to me."

---

[2] According to a statement made by Mr. Odom's counsel during the hearing, this was the fifth motion to compel filed by Mr. Odom regarding Ms. Odom's responses to discovery.

[3] Ms. Odom is an attorney licensed to practice in Tennessee.

Later that day, the trial court entered an order finding Ms. Odom in "willful, direct and summary contempt of court beyond a reasonable doubt." The court imposed a sentence of three days' incarceration, and Ms. Odom was released on a $250 bond. Ms. Odom filed a timely notice of appeal.

## II.  Issues Presented

Ms. Odom presents the following issue for our review, which we have restated slightly:

1.      Whether the trial court abused its discretion by holding Ms. Odom in contempt of court for her inability or unwillingness to identify the individual(s) with whom she had engaged in sexual relations since her separation from Mr. Odom.

Mr. Odom presents the following additional issue for consideration:

2.      Whether Mr. Odom should be awarded his attorney's fees incurred on appeal or awarded damages for a frivolous appeal, and whether all costs on appeal should be assessed against Ms. Odom.

## III.  Standard of Review

As this Court has elucidated with regard to a contempt finding by the trial court:

A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law. *Robinson* [*v. Air Draulics Eng'g Co.*], 377 S.W.2d [908,] 912 [(Tenn. 1964)]. Generally, the trial court's decision will not be disturbed absent an abuse of discretion. *Id.* One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. *Id.* On appeal following a finding of contempt, however, the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. *Id.* With respect to the trial court's determinations on questions of law, however, our review is *de novo* with no presumption of correctness. *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000).

*Watkins ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *3 (Tenn. Ct. App. May 13, 2009).

This Court has further explained that "[a]n abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *In re Brown*, 470 S.W.3d 433, 442 (Tenn. Ct. App. 2015) (quoting *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105 (Tenn. 2011)).

## IV.  Contempt of Court

"Contempts may be criminal or civil in nature depending on whether the purpose of the contempt is to coerce or to punish." *State v. Turner*, 914 S.W.2d 951, 954 (Tenn. Crim. App. 1995).  This Court has previously distinguished between the two types of contempt of court as follows:

> Civil contempt is intended to benefit a litigant while criminal contempt is punishment for an offense against the authority of the court.  Civil contempt is imposed to compel compliance with an order, and parties in contempt may purge themselves by compliance.  Criminal contempt, on the other hand, is punishment for failing to comply with an order, and the contemptuous party cannot be freed by eventual compliance.

*Duke v. Duke*, No. M2013-00624-COA-R3-CV, 2014 WL 4966902, at *30 (Tenn. Ct. App. Oct. 3, 2014) (quoting *Sherrod v. Wix,* 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992)).

This Court has further determined that "the conduct involved and the sanctions imposed, not [] the labels of 'civil' or 'criminal' affixed by the parties or the trial court" characterize a contempt as criminal or civil.  *See Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *2 (Tenn. Ct. App. Feb. 26, 1997) (citing *Sherrod,* 849 S.W.2d at 786-87).  Additionally, this Court stated:

> The purpose of a civil contempt proceeding is to coerce the contemner to comply with a court's order.  It is a remedial proceeding, *Robinson v. Gaines*, 725 S.W.2d 692, 694 (Tenn. Crim. App. 1986), and is intended to benefit the party seeking the contempt order.  *State ex rel. Agee v. Chapman*, 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995).  Civil contempt sanctions are open-ended and terminate when the contemner complies with the court's order.  In this sense, the contemner "carries the keys to the jail in his or her own pocket." *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 127, 191 S.W. 974, 974 (1917); *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986).

On the other hand, the purpose of a criminal contempt proceeding is to vindicate the authority of the law and the court. *State ex rel. Agee v. Chapman*, 922 S.W.2d at 519; *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). It is a punitive proceeding intended to impose a fixed punishment for past actions. *Sitton v. Finley*, 743 S.W.2d 933, 935 (Tenn. Crim. App. 1987). Punishment for criminal contempt is not conditional and must be served even if the contemner later complies with the court's order. *Robinson v. Gaines*, 725 S.W.2d at 694.

*Jones*, 1997 WL 80029, at *2.

With regard to sanctions for contempt, our Supreme Court has declared, "[p]unishment for civil contempt is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party." *See Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tenn.*, 104 S.W.3d 465, 473 (Tenn. 2003). By contrast, "criminal contempts are 'intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society,'" and punishment for criminal contempt is "both punitive and unconditional in nature and serves to adjudicate 'an issue between the public and the accused.'" *See id.* at 474. *See also Black v. Blount,* 938 S.W.2d 394, 397 (Tenn. 1996) ("[T]he inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts."). Sanctions for criminal contempt are generally "punitive and unconditional by nature" and thus should be administered "'when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice.'" *See Watkins,* 2009 WL 1328898, at *3 (quoting *Robinson v. Air Draulics Eng'g Co.,* 377 S.W.2d 908, 912 (Tenn. 1964)).

Contempt is further categorized into direct and indirect forms. "Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily." *See Turner*, 914 S.W.2d at 955 (quoting *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978)). Indirect contempt, however, "is based upon acts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing." *Id.*

In the case at bar, Ms. Odom argues that the trial court's order was "the clear definition of civil contempt." In support of her contention, Ms. Odom cites the following statement made by the trial court judge at the August 2017 hearing:

The Court: [Counsel for Ms. Odom] can have five minutes to talk to his client and then she needs to go across the street and she'll stay there until

5

she provides the Court information that it wants . . . . That will be the Order of the Court.

We note, however, that in its written order, the trial court judge characterized Ms. Odom's conduct as "direct and summary contempt of Court." As our Supreme Court has explained: "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting *Anil Constr., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at \*8 (Tenn. Ct. App. Aug. 7, 2014)).

In the trial court's August 4, 2017 order, the court held Ms. Odom in "willful, direct and summary contempt of court for failing to supply the name or names of any individual(s) with whom she has engaged in sexual relations since the separation of the parties." The trial court sentenced Ms. Odom to serve three days in the Davidson County jail or workhouse. Notably, the court did not state in its order that Ms. Odom's sentence would terminate if and when she provided the information sought.

Based upon the language utilized in the trial court's order, we determine that the court found Ms. Odom guilty of criminal contempt of court. The trial court ordered Ms. Odom to serve three days in jail, which is consistent with this Court's definition of punishment for criminal contempt. *See Jones*, 1997 WL 80029, at \*2. Furthermore, Ms. Odom's release was not contingent upon her provision of the name(s) sought by Mr. Odom and therefore was not intended for the benefit of the opposing party.

As previously explained by the Tennessee Court of Criminal Appeals, "the court's authority to punish certain acts as contempt derives from statute, and is limited to the forms of conduct set forth in Tennessee Code Annotated § 29-9-102." *See Turner*, 914 S.W.2d at 955; *see also Black*, 938 S.W.2d at 397 ("Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct punishable by contempt."). Tennessee Code Annotated § 29-9-102 (2012) provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> > (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Furthermore, Tennessee Rule of Criminal Procedure 42, which addresses criminal contempt, provides in pertinent part:

(a) Summary Disposition. A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt. The contempt order shall recite the facts, be signed by the judge, and entered in the record.

As this Court has explained:

"The determination of what action constitutes contempt necessitating immediate summary disposition rests within the discretion of the trial judge." [*State v. Smith,* No. W1999-00814-CCA-R3-CD, 2000 WL 1664280, at *6 (Tenn. Crim. App. Oct. 23, 2000).] "Unfortunately, our courts are occasionally subjected to genuinely disruptive conduct." [*State v.*] *Beeler,* 387 S.W.3d [511,] 520 n.5 [(Tenn. 2012)]. "In such cases, exercise of the summary contempt power may be necessary to restore order, but Rule 42(a) presupposes that the observed conduct is contemptuous; if the court has any doubt on this point, a summary proceeding is not the appropriate means for adjudicating the matter." *Id.* Summary punishment "is reserved for those circumstances in which it is essential" because it "departs, often dramatically, from traditional notions of due process that are the hallmarks of criminal justice." *State v. Turner,* 914 S.W.2d 951, 957 (Tenn. Crim. App. 1995). "As a result, courts universally agree that

7

summary contempt powers should be used sparingly, and even then only in cases of 'exceptional circumstances.'" *Id.* (quoting *Harris v. United States,* 382 U.S. 162, 164-65, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965)). Determining whether exceptional circumstances exist "is generally left to the sound discretion of the trial court." *Watkins,* [2009 WL 1328898,] at *6.

*In re Brown*, 470 S.W.3d at 445.

In the case at bar, the trial court found as follows in its order concerning contempt:

This cause came on to be heard on the fourth day of August, 2017, before the Honorable Phillip Robinson, Judge of the Third Circuit Court for Davidson County, Tennessee upon the Complainant/Husband's motion for sanctions and other relief. During the proceedings, counsel for the Husband requested that the Court compel the Defendant/Wife to respond to certain deposition questions which she refused to answer at the time of the deposition. Among those questions were whether the Wife had engaged in sexual relations with anyone other than the Husband since the separation of the parties on or about January 11, 2015. The Court determined that the question was relevant to the pending divorce action and directed the Wife to answer the question. After consultation with counsel, counsel for the Wife acknowledged that the Wife had engaged in sexual relations since the separation which was confirmed by the Wife. The Court then directed the Wife to provide the name or names of any individuals with whom she had engaged in sexual relations since the separation of the parties. The Wife then professed that she could not recall the name or names of any such individuals.

Throughout the hearing related to the Wife's failure to fully comply with discovery requests, the Court found the Wife to be evasive and attempted to avoid answering discovery questions which the Court directed to her. The Court admonished Wife that the Court would not accept her statement that she could not remember any individuals with whom she had sexual relations with since her separation from the Husband. After further consultation with counsel, she presented to the court the name of "Ben" as an individual with whom she had had sexual relations but professed she could not remember the rest of his name or any contact information. The Court advised her that her refusal to supply the information would result in her being incarcerated. The Court gave her repeated opportunities to provide the requested information. The Court found that her statements were not credible.

8

The Court finds and holds the Wife in willful, direct and summary contempt of court beyond a reasonable doubt for refusing to supply the name of the individual(s) with whom she had engaged in sexual relations.

The Court determined that this was the first finding of contempt against the Wife during these proceedings. The Court therefore sentenced her to three (3) days in the Davidson County jail or workhouse.

At request of counsel, the Court set an appearance bond in the amount of $250 to enable the Wife to appeal the Court's ruling prior to execution of sentence.

Ms. Odom argues that the trial court abused its discretion by determining that she was in "willful, direct and summary contempt of court" for failing to provide the name of individual(s) with whom she had sexual relations following her separation from Mr. Odom. Ms. Odom asserts in part that the trial court was required to find that her actions actually constituted an obstruction of justice in order to summarily punish her for criminal contempt, apparently based on Tennessee Code Annotated § 29-9-102(1).

Although the Tennessee Court of Criminal Appeals has opined that direct criminal contempt actions are typically premised on Tennessee Code Annotated § 29-9-102(1), *see Turner*, 914 S.W.2d at 956, our Supreme Court has explained that criminal contempt may be based upon "any willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute." *See Black*, 938 S.W.2d at 399. The High Court also emphasized that "disrespectful conduct by an attorney has a greater impact upon the dignity of a court than does disrespectful conduct of a lay person." *Id*. at 401.

Although the trial court did not delineate the specific type of "willful" conduct of which Ms. Odom was accused pursuant to Tennessee Code Annotated § 29-9-102, the court's reference to Ms. Odom's "refusal to supply" information implicates subsection (3), involving "willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts," rather than subsection (1). The trial court's order suggests that Ms. Odom willfully refused to provide information that the court had directed her to disclose. The court noted in its order that Ms. Odom had been "evasive and attempted to avoid answering discovery questions which the Court directed to her" throughout the hearing.

Ms. Odom's essential argument on appeal is that there was insufficient evidence that her behavior was willful. Ms. Odom argues that "[i]n essence, the judge found her guilty of perjury before him and summarily punished her for it." She further argues that "there is no basis for summarily punishing a litigant for perjury" and that the correct proceeding would be to "refer the litigant's behavior to the District Attorney General for a perjury prosecution." As our Supreme Court has elucidated with regard to sufficiency of evidence in the context of a criminal contempt conviction:

> When the sufficiency of the convicting evidence is raised as an issue on appeal, this Court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e). We do not reweigh the proof. The defendant has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. A guilty verdict removes the presumption of innocence and it is replaced with a presumption of guilt. We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt.

*Black*, 938 S.W.2d at 399 (internal citations omitted).

Upon our thorough review of the hearing transcript, we determine that the transcript supports the trial court's verdict of guilt regarding Ms. Odom's criminal contempt. As the trial court stated in its order, Ms. Odom's answers to questions were evasive and vague throughout the hearing, despite the trial court judge's admonition that "other than putting [Ms. Odom] in jail, I don't know of any way to get a correct response from her." The court repeatedly noted throughout the hearing that Ms. Odom was refusing to provide information and, at one point, actually began to count to ten before Ms. Odom disclosed her home address.

Following the final question posed to Ms. Odom concerning the identity of her sexual partner(s), a lengthy verbal exchange between Ms. Odom and the trial court judge ensued. During this exchange, the trial court provided Ms. Odom with numerous opportunities to provide the requested information. Ms. Odom continued to represent that she could not remember any information regarding her sexual partner(s), although she did finally provide that one such partner was named "Ben." At the end of the discussion, the court stated:

> The Court finds Ms. Odom's answer not credible and the Court finds that her failure to provide me with the name of any individual – she admits

she's had relations with someone else but she refuses to provide me with a name of any one of those individuals.

The Court considers that direct summary contempt of Court.

We determine that the evidence adduced during the hearing supports the findings of the trial court of guilt beyond a reasonable doubt. *See, e.g., In re Bowling*, No. E2007-00262-COA-R3-JV, 2007 WL 2780378, at *5 (Tenn. Ct. App. Sept. 25, 2007) (concluding that the trial court transcript supported the trial court's finding of criminal contempt). We further determine that Ms. Odom has failed to illustrate to this Court why the evidence is insufficient to support the verdict.

Ms. Odom contends that there was no evidence that she was guilty of perjury. This Court has previously stated that the "elements necessary to sustain a conviction for the statutory crime of perjury are wholly different and distinct from those necessary to justify imposition of a contempt citation." *Prescott v. Prescott*, No. 89-297-II, 1990 WL 8626, at *6 (Tenn. Ct. App. Feb. 7, 1990). This Court further stated:

In order for perjury to amount to contempt, there must be more than a false swearing. There has to be an additional element of obstruction of justice or interference with the processes of the court. For example, false swearing could occur in a deposition, in an answer to an interrogatory, in an oath to a deed, or in some other context which might justify a conviction for perjury, but which would not necessarily amount to a contempt of court.

*Id.*

The hearing transcript in the case at bar, however, reveals more than a "false swearing." Rather, the transcript demonstrates that Ms. Odom's conduct at the hearing was disrespectful toward the trial court judge and that her responses were evasive and often not forthcoming, thereby causing interference with the processes of the court.[4] The trial court did not merely find that Ms. Odom was lying; instead, the court found that she refused to provide the information that the court had ordered her to provide.

---

[4] We note that during the hearing, the trial court made statements characterizing Ms. Odom's responses as "smart comment[s]" and her behavior as "disturbing." As our Supreme Court has emphasized, "[u]nlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

In summary, the evidence supports the trial court's determination that Ms. Odom willfully disobeyed the directive of the court. *See* Tenn. Code Ann. § 29-9-102(3). This behavior occurred in the presence of the court and thus constituted direct criminal contempt. When determining what circumstances would be deemed exceptional and require summary punishment, the Tennessee Court of Criminal Appeals has "considered such factors as the reasonably expected reactions of those in the courtroom, the manner in which the remarks are delivered, the delay in the proceedings caused by a disrespectful outburst, and the failure to heed explicit directives of the court." *Turner*, 914 S.W.2d at 957-58 (citing *In re Gustafson*, 619 F.2d 1354, 1359 (9th Cir. 1980), *on reh'g*, 650 F.2d 1017 (9th Cir. 1981)) (emphasis added). We therefore determine that the trial court did not abuse its discretion and affirm the trial court's summary disposition regarding Ms. Odom's direct criminal contempt of court.

## V. Attorney's Fees

Mr. Odom seeks an award of attorney's fees incurred in defending against Ms. Odom's appeal of the trial court's criminal contempt finding. Mr. Odom concedes that he has been unable to present authority for awarding attorney's fees to a party under these factual circumstances because, as this Court has previously explained, "the purpose of criminal contempt is to uphold the authority and power of the trial court" and because "attorney's fees are not within the statutory limits to criminal contempt." *See Watts v. Watts*, 519 S.W.3d 572, 585 (Tenn. Ct. App. 2016). As the *Watts* Court concluded:

> Absent a statute or contractual provision permitting [attorney's fees in a proceeding for criminal contempt], a party is not entitled to recover their attorney's fees. We find no statutory authority permitting a party to recover attorney's fees incurred to prosecute a petition for criminal contempt and Mother does not rely on a contractual provision in seeking to recover her attorney's fees in the context of the petition for criminal contempt.

*Id.* (internal citations omitted). The *Watts* Court specifically found that attorney's fees were not awardable in a criminal contempt proceeding brought pursuant to Tennessee Code Annotated § 36-5-103(c), which allows a fee award in actions involving the enforcement of orders regarding alimony, child support, custody, and co-parenting schedules. *Id.*[5]

---

[5] We recognize that Tennessee Code Annotated § 36-5-103(c) was recently amended to specifically provide that a prevailing party can be awarded fees "in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children . . . ." *See* 2018 Tenn. Pub. Acts, Ch. 905, § 1 (H.B. 2526). Inasmuch

Mr. Odom also asserts that Ms. Odom's appeal should be characterized as frivolous, thus entitling him to an award of attorney's fees as damages. Frivolous appeals are governed by Tennessee Code Annotated § 27-1-122 (2017), which provides:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Although Ms. Odom was not successful with regard to the issue she raised on appeal, we determine, in our discretion, that her appeal was not so devoid of merit as to warrant an award of attorney's fees to Mr. Odom. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (explaining that this Court has discretion regarding whether to award damages for a frivolous appeal); *Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). The discretion to determine whether an appeal is frivolous should be exercised "'sparingly so as not to discourage legitimate appeals.'" *See Eberbach*, 535 S.W.3d at 475 (quoting *Whalum v. Marshall*, 224 S.W.3d 169, 181 (Tenn. Ct. App. 2006)). We therefore deny Mr. Odom's request for attorney's fees on appeal.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. We deny Mr. Odom's request for an award of attorney's fees on appeal. We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are taxed to the appellant, Rachel Lea Zamata Odom.

_____
THOMAS R. FRIERSON, II, JUDGE

---

as this action was commenced prior to the effective date of the amendment, we determine that the amended version of the statute is not applicable herein. We note also that this is not an action involving a decree of alimony, custody, or parenting.

13